ERVIN, Judge.
Appellant, First Hospital Corporation of Florida (First Hospital), appeals an order of appellee, the Department of Health and Rehabilitative Services (HRS), denying First Hospital’s application for a certificate of need (CON). Appellee, Humana Hospital Palm Beaches (Humana), cross appeals, contending that the hearing officer and HRS erred in concluding that Humana lacked standing to challenge First Hospital’s CON. We affirm without comment the issues First Hospital raises in its appeal. As to the cross appeal, we conclude that Humana did have standing, but that the dismissal of Humana’s petition for formal hearing after the hearing was completed was harmless error in that Humana was permitted to fully participate in the proceedings.
On February 3, 1989, HRS preliminarily approved First Hospital’s CON application to establish an eighty-bed facility comprising forty-eight short-term and thirty-two residential treatment children/adolescent psychiatric beds in Palm Beach County. Three existing providers of psychiatric services in Palm Beach County, including Humana, contested HRS’s preliminary decision. After a seven-day hearing in January 1990, the hearing officer concluded that First Hospital failed to demonstrate financial feasibility pursuant to Section 381.705(l)(i), Florida Statutes (1989), and HRS adopted the hearing officer’s recommendation. As previously stated, we affirm this portion of the final order. The hearing officer also concluded, and HRS concurred, that Humana lacked standing because its comparable short-term program was merely in the start-up mode rather than operational, and thus Humana’s petition for formal hearing and petition to intervene should be dismissed. We disagree.
Standing in a CON proceeding is governed by Section 381.709(5)(b), Florida Statutes (1989), which provides:
Existing health care facilities may initiate or intervene in such administrative hearing upon a showing that an established program will be substantially affected by the issuance of a certificate of need to a competing proposed facility or program within the same district[.]
This provision, enacted in 1987, tightened the standing requirement[1] by requiring proof of an existing program rather than proof of a CON to merely start a program.
Humana does not dispute the following factual findings in the hearing officer’s recommended order: In 1983 Humana received a CON to provide short-term adult psychiatric beds. Humana built the facility by 1986, yet began providing adolescents with long-term psychiatric services without HRS approval. Following HRS investigation, Humana obtained a CON modification on July 14, 1989 to provide short-term adolescent beds. In addition to that CON, Humana had previously obtained a CON on December 14, 1988 for fifteen adolescent and short-term adult psychiatric beds, and another CON on February 25, 1989 to re-designate fifteen short-term beds to long-term beds.
*312 The hearing officer in the case at bar, consistent with section 381.709(5)(b), focused on whether Humana’s short-term program was operational rather than in the start-up mode pursuant to its CON. In so doing, he found that Humana had actually begun providing short-term beds “no earlier than July 1989,” and quoted Humana’s proposed recommended order as representing that its short-term adolescent program was still in the “start-up mode.” Therefore, the hearing officer concluded that Hu-mana failed to show it had an established, operational program for short-term psychiatric services for adolescents when it filed its petition on July 31, 1989. However, the hearing officer failed to consider whether twenty-seven long-term adolescent psychiatric beds that Humana already had in operation established standing.
In Psychiatric Institutes of America, Inc. v. Department of Health and Rehabilitative Services, 491 So.2d 1199 (Fla. 1st DCA 1986), based on the 1985 standing provision, the hearing officer found that appellant’s existing facility, which provided short-term (sixty days or less) adolescent psychiatric beds, and the proposed facility, which would provide long-term (ninety days average) adolescent psychiatric beds, would share a “significant overlap of services.” Id. at 1200. HRS accepted the finding, but denied standing to appellant based on the difference in the rules regarding bed-need methodology for short-term as opposed to long-term beds. This court concluded that HRS erred in denying standing, stating: “The existence of different bed need methodology rules does not control standing.” Id. at 1201. Accord Medical Center Hosp. v. Department of Health & Rehab. Servs. 505 So.2d 3 (Fla. 1st DCA 1986) (short-term psychiatric facilities have standing to contest issuance of a CON for a long-term psychiatric facility). We similarly conclude that Humana’s proof regarding its existing long-term adolescent psychiatric program established Humana’s standing in the case at bar.
We note that the hearing officer stated as a conclusion of law that Humana failed to demonstrate existence of a short-term program “and has otherwise failed to demonstrate that any existing program it may have had would be substantially adversely affected.” There are no findings of fact, however, that relate to anything besides short-term beds; therefore, there is no support for the hearing officer’s disregard of Humana’s evidence as it pertains to Huma-na’s long-term program. In Wong v. Career Service Commission, 371 So.2d 530 (Fla. 1st DCA 1979), the supreme court stated that a conclusion of law must be supported by particular findings of fact, that the hearing officer must explain a conclusion of law in light of such facts, and that absence of support requires reversal.
We conclude that the following competent, substantial evidence did, in fact, establish Humana’s standing in this case: Neils Vernegaard, Executive Director of Humana Hospital Palm Beaches, testified that the hospital started serving adolescents in January of 1987, and was currently providing thirty short-term and fifteen long-term beds. He testified that approval of the First Hospital CON would have several adverse effects: (1) there is a finite pool of adolescent patients needing inpatient psychiatric treatment, which would dwindle if First Hospital comes on-line; (2) there is a finite pool of qualified professionals to staff such institutions, e.g., adolescent psychiatrists and nurses, physical therapists, and guidance counselors, and that First Hospital would take from this limited pool; and (3) that First Hospital’s demand for qualified professionals would inflate salaries in the area.
Gene Nelson, a health-care consultant, testified that the adolescent psychiatric market is very competitive in the area and that the competition will only increase over time. Addition of First Hospital into the mix would “fragment things even worse” because of low admissions into such programs. He said that if First Hospital achieved its projected utilization, Humana would be significantly adversely affected because (1) it is located closer to the First Hospital site than the other competitors, and (2) that First Hospital would divert from existing providers more than it would obtain new patients purely from population *313 growth. He concluded that Humana could lose 50 to 100 new admissions annually, which is equivalent to 3,500 patient days.
Daniel Sullivan, health-care management consultant, testified that Humana could lose $207 per day per patient lost, based on the above calculation of lost admissions, or $600 000 per year, which would have a substantial adverse impact on Humana. Moreover, he said that Humana already showed a small operating loss in 1989 (although this was not allocated between its psychiatric and medical/surgical units), therefore any lost patient revenue would hit Humana very hard, endangering its long-term survival.
This evidence of prospective economic injury demonstrates that Humana’s existing program would be substantially affected by approval of the CON to First Hospital. Baptist Hosp., Inc. v. Department of Health & Rehab. Servs., 500 So.2d 620, 625-26 (Fla. 1st DCA 1986); Florida Medical Center v. Department of Health & Rehab. Servs., 484 So.2d 1292, 1294 (Fla. 1st DCA 1986). Nevertheless, even though we conclude that Humana had standing based upon its existing program, we affirm the order in the case at bar. The hearing officer did not dismiss Humana’s petitions challenging First Hospital’s CON until he entered the recommended order; therefore, Humana was able to fully participate in the proceedings below. Psychiatric Insts. of Am., 491 So.2d at 1201.
AFFIRMED.
WIGGINTON, J., and CAWTHON, Senior Judge, concur.

. Section 381.494(8)(e), Florida Statutes (1985), required that a person rather than an "established program" be "substantially affected.”