610 So.2d 547 (1992)
Martin GREGORY and Richard Wiggins, as Trustees, and Paul Hoffman, Appellants,
v.
INDIAN RIVER COUNTY and State of Florida Department of Environmental Regulation, Appellees.
No. 90-3135.
District Court of Appeal of Florida, First District.
December 4, 1992.
Rehearing Denied January 22, 1993.
*549 Michael O'Haire of Smith, O'Haire, Quinn & Smith, Vero Beach; J. Alan Cox, Tallahassee; Will J. Richardson of Richardson Law Offices, Tallahassee, for appellants.
David M. Rogero and Arthur F. Heller of Blackwell & Walker, Douglas H. MacLaughlin, Asst. General Counsel, Dept. of Environmental Regulation, Tallahassee, for appellees.
WOLF, Judge.
Appellants, Martin Gregory and Richard Wiggins as trustees, and Paul H. Hoffman challenge a final administrative order of the Department of Environmental Regulation (DER) granting a permit to appellee, Indian River County (county), to construct a stormwater treatment system and to engage in certain dredge and fill activities. The permit was sought in connection with the proposed extension of Indian River Boulevard, a road within Indian River County. The appellants are the owners in fee simple of the property upon which the county proposed to conduct a substantial portion of the activities which are the subject of the permit.
Appellants argue three issues on appeal: 1) Whether the appellants were improperly denied standing in a proceeding to determine whether to issue a permit for dredge and fill activities on the appellants' property; 2) whether DER has dredge and fill jurisdiction within the land in question; and 3) whether the mitigation required by DER exceeded that warranted by the extent and conditions of the wetlands impacted. While we hold that the appellants were improperly denied standing, we affirm the decision of the department because the hearing officer allowed all parties an opportunity to fully participate in the hearing and gave full and appropriate consideration to the issues which were properly before her.
The appellee, Indian River County, applied to the Florida Department of Environmental Regulation on November 27, 1987, for permits to construct a stormwater treatment facility and to engage in certain dredge and fill activities related to construction of the county's proposed extension of Indian River Boulevard. The proposed extension of the road would follow the western dike of Indian River Mosquito Impoundment No. 22 and would require dredging and filling both inside the impoundment to the east of the dike and outside the impoundment to the west of the dike.
The county was not the owner of the land in question, but sought to determine the extent of environmental mitigation required by the permitting agencies before deciding what property should be acquired through condemnation. Initially, DER indicated that it did not have wetlands jurisdiction over the mosquito control impoundment *550 area because of the lack of a direct service connection with the waters of the state. While the county was developing a mitigation plan, DER clarified its policy on jurisdiction within mosquito control impoundments.
The department determined that land which would have been considered wetlands but for the presence of mosquito control dikes, would be wetlands. The county did not challenge the interpretation, nor the amount of mitigation required. The county submitted a plan which DER accepted.
DER issued an intent to grant the requested permits on January 12, 1990. The appellants moved to intervene and petitioned for a formal administrative hearing pursuant to section 120.57, Florida Statutes, on January 12, 1990.[1]
The appellants filed similar petitions to intervene which, in pertinent part, alleged
5. Petitioner is the record titleholder to significant portions of the real property upon which the Applicant intends to construct its project (i.e., the Indian River Boulevard north extension). Petitioner's ability to use, enjoy, and develop his own property would be substantially affected if the Applicant received the subject permit. Despite the pending effort to secure a permit for dredging and filling activities on the Petitioner's land, the Applicant does not possess any right, title, or interest in the subject property. The Applicant's project, if constructed, permanently would prohibit Petitioner's use of his own property.
6. The issues of material fact upon which the Department's proposed action is based that Petitioner disputes include, but are not limited to, the following:
a) that the Department has wetlands resource regulatory jurisdiction over the width and breadth of the area(s) asserted by the Department and acquiesced in by the Applicant.
b) that the Rotational Impoundment Management (RIM) plan and other mitigative measures required by the Department and acquiesced in by the Applicant are necessary or appropriate to offset the loss of purported wetlands due to filling activities associated with the proposed project.
c) that the Applicant's right-of-way, plan of development for the road and associated bridges, and mitigation efforts represent the least adverse impact on the Petitioner's property or on the environment.
A hearing was held before a hearing officer from the Division of Administrative Hearings on June 19 and 20, 1990. Appellants participated in said hearing and had an opportunity to present and cross-examine witnesses. Appellants presented one expert witness who testified that the mitigation accepted by the department was excessive. As a result of this, the appellants argued that a greater portion of their lands would be taken by the county to complete its projects, and the appellants would be deprived of the use and enjoyment of the property.
After the hearing, the hearing officer made the following pertinent findings of fact concerning standing of the appellants, the wetlands jurisdiction, and sufficiency of the proposed mitigation:
4. Impoundment 22 was constructed prior to 1957. Originally, the impoundment was periodically flooded in an effort to limit salt marsh mosquito breeding. Later, insecticides were employed to deter mosquito proliferation. The area within the impoundment contains wetland indicator plant species which suggests that prior to the construction of the dikes, that the tract was a wetlands area.
7. The dispute over the wetlands calculation arose due to a Department interpretation of the mosquito impoundment. The Department's current policy requires that the impoundment be considered wetlands *551 if it would have been wetlands but for the presence of the mosquito control dikes. On May 24, 1989, the Department advised the County of that interpretation and of the extent of the impacts to wetlands due to the road proposal. The Department asserted that in addition to the 8.1 acres outside of the impoundment to be impacted, approximately 7.12 acres within the impoundment would be effected. The County acquiesced in that interpretation and agreed to provide mitigation for the project based upon that assumption of jurisdiction. The Petitioners have disputed that jurisdictional interpretation.
12. Without mitigation, the negative impacts associated with the construction of the road extension would cause a loss of habitat and would adversely affect the conservation of fish and wildlife. The area within impoundment 22 is disturbed wetlands in that over the years the parcel has experienced an invasion of exotic species such as melaleuca and Brazilian pepper trees. Because the diked perimeter effectively cut off the natural flows of waters through the area, the native plants (many among the wetlands indicator species) have been adversely affected.
13. The Department considers undisturbed wetlands to be of a higher quality than disturbed wetlands. Consequently, mitigation proposed for wetland loss considers whether the proposal creates new wetlands, enhances existing wetlands, or simply preserves wetlands. Mitigation ratios for the various categories range from 1:1 to 5:1, when wetlands are created to replace the lost wetland, to 10:1 to 100:1, when existing wetlands are merely preserved.
14. In this case, the mitigation RIM plan will eliminate potential negative environmental impacts from spraying larvacides and will enhance the wetlands within the impoundment. The ratio of acreage proposed for mitigation is not unreasonable given the benefits to be derived from the County's proposal.
15. The mitigation proposed by the County adequately offsets the loss of wetlands that will occur.
The hearing officer also made the following pertinent conclusions of law
9. In this case, the County has provided reasonable assurances that its road project will not violate water quality standards.
10. The County has further established that based upon the balancing criteria set forth in Section 403.918, Florida Statutes, that the project is not contrary to the public interest.
11. Moreover, the mitigation proposed by the County and required by the permit conditions will adequately mitigate any adverse effects caused by the project.
12. The Petitioners have not established a substantial environmental interest which will be adversely affected by the approval of the County's project. The economic interests which Petitioners have argued must be considered are inadequate, as a matter of law, to show that their interests will be substantially affected by the agency approval of the subject permits. See Agrico Chemical Company v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981).
The final order of the department adopted all material findings and conclusions of the hearing officer. The department also fully addressed appellants' exception to the findings of fact and conclusions of law.
The difficulty in this case arises because of the interrelationship between the necessity for obtaining environmental permits from administrative agencies in connection with a proposed governmental project, and the necessity for a circuit court determination of the amount of land necessary to complete the project in accordance with all environmental regulations. See Seadade Industries, Inc. v. Florida Power & Light Co., 245 So.2d 209 (Fla. 1971). In order for this court to resolve the issues presented (including the standing issue), it must first determine which matters should be resolved *552 through an administrative environmental permitting procedure, and which matters should be resolved in a circuit court eminent domain proceeding. Department of Business Regulation v. Ruff, 592 So.2d 668 (Fla. 1991).[2]
A governmental entity may only utilize the powers of eminent domain to obtain ownership of land to the extent that it has shown a reasonable necessity for acquiring the land in question. Pasco County v. Franzel, 569 So.2d 877 (Fla. 2nd DCA 1990). The final determination of the extent of land which must be utilized in order to comply with environmental regulations, however, can only be determined through the administrative permitting process. The courts, therefore, have allowed condemning authorities to pursue condemnation prior to obtaining environmental permits upon a showing of a reasonable probability of obtaining the necessary permits. Seadade Industries, Inc. v. Florida Power and Light Co., supra; Maples v. State of Florida, Dep't of Transp., 588 So.2d 25 (Fla. 1st DCA 1991).
In the instant case, it appears that the governmental entity chose to pursue the condemnation and environmental permitting simultaneously rather than initially pursuing the eminent domain action.[3] It is, therefore, necessary to determine the proper scope of both proceedings.
In this administrative proceeding, the appellants sought to have the hearing officer determine 1) the extent of the department's wetlands jurisdiction over appellants' land, and 2) whether the mitigation plan agreed to by the department and the county was unreasonable in that a plan of mitigation could have been promulgated which would have involved condemnation of less of appellants' land. It appears that all parties agree that the issue of wetlands jurisdiction of the department is properly resolved in the administrative process. The department and the county assert that the second issue should be resolved in the circuit court as part of the eminent domain proceedings. We agree.
The reasonableness of the exercise of the power of eminent domain and the reasonable necessity for taking the land are matters that have traditionally been resolved in circuit court. Canal Authority of Florida v. Miller, 243 So.2d 131 (Fla. 1970); see Pasco County v. Franzel, 569 So.2d 877 (Fla. 2nd DCA 1990); School Bd. of Broward County v. Viele, 459 So.2d 354 (Fla. 4th DCA 1984), rev. denied, 467 So.2d 1000 (Fla. 1985). The issue of necessity for the taking of the property in the instant case is not as appellants suggest, whether there were other satisfactory plans of mitigation which would have utilized less of appellants' land. In fact,
a landowner cannot object merely because some other location might have been made or some other property would have been suitable for the purpose.
Wilton v. St. John's County, 98 Fla. 26, 49, 123 So. 527, 535 (1929).
The availability of alternative means or routes is not the sole criteria by which to measure discretion of the condemning authority. Hillsborough County v. Sapp, 280 So.2d 443 (Fla. 1973). The decision made by the local elected body concerning what and how much land is to be taken involves many factors and is essentially legislative or quasi-legislative in nature. City of St. Petersburg v. Vinoy Park Hotel Co., 352 So.2d 149 (Fla. 2nd DCA 1977). Cf. Pasco County v. Franzel, supra at 879.[4] The decision may not only *553 involve environmental factors, but also factors such as cost and safety, as well as general long-range planning concerns. See concurring opinion of Judge Spector in Chipola Nurseries, Inc. v. Division of Administration, Dep't of Transp., 294 So.2d 357 (Fla. 1st DCA 1974). See also School Bd. of Broward County v. Viele, supra. The decision of a condemning authority concerning necessity should not be disturbed, "unless a condemning authority acts illegally, in bad faith or it abuses its discretion." School Bd. of Broward County, supra at 356. The issue to be determined, therefore, must be restated: Whether an administrative body (DER) has the power to review the discretionary decision of the local elected body concerning the reasonable necessity for lands to be condemned. This question must be answered in the negative.
The hearing officer and the agency have limited jurisdiction of what may be determined in a wetlands permitting procedure. See Miller v. Department of Environmental Regulation, 504 So.2d 1325 (Fla. 1st DCA 1987); Council of the Lower Keys v. Charley Toppino and Sons, Inc., 429 So.2d 67 (Fla. 3rd DCA 1983). The issues which are properly determined in this administrative process are 1) the extent of wetlands involved, and 2) whether the mitigation plan proposed by the county was adequate. Neither DER nor the hearing officer should consider issues which are not properly considered in the administrative proceeding. Department of Business Regulation v. Ruff, supra; Buckley v. Department of Health and Rehabilitative Servs., 516 So.2d 1008 (Fla. 1st DCA 1987).
Absent specific legislative authorization, an administrative agency lacks the authority to exercise oversight of a decision of a local elected body concerning reasonable necessity. Cataract Surgery Center v. Health Care Cost Containment Bd., 581 So.2d 1359 (Fla. 1st DCA 1991); Florida League of Cities, Inc. v. Department of Ins., 540 So.2d 850 (Fla. 1st DCA 1989), rev. denied, 545 So.2d 1367 (Fla. 1989). These issues are properly determined in circuit court.[5] Issues such as whether there might be another mitigation plan involving less land which is acceptable, or whether the county may have acted in bad faith by attempting to condemn more land than is reasonably necessary are not properly determined in the administrative process. Thus, the department did not err by refusing to address the issue of whether the mitigation proposed by DER and accepted by the county was excessive.
DER and the county assert that the hearing officer was correct in denying the landowners' standing to intervene in the administrative process under the test established in Agrico Chemical Co. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2nd DCA 1981), rev. denied, Freeport Sulphur Co. v. Agrico Chemical Co., 415 So.2d 1359 (Fla. 1982); and rev. denied, Sulphur Terminals Co. v. Agrico Chemical Co., 415 So.2d 1361 (Fla. 1982). In Agrico Chemical Co., the court set forth the test for standing of a third party to intervene in another party's request for a permit. The Second District Court of Appeal noted that a person can attain party status by, among other things, either being a named party, being given a statutory right to participate, or by having *554 its "substantial interests ... affected by the proposed agency action. § 120.52(12), Fla. Stat. (1989). In this case, the appellants were neither named parties nor given a statutory right to participate. Therefore, in order to attain standing, the appellants must demonstrate that they have a substantial interest in this proceeding. Thus, a potential intervenor must demonstrate
1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of the type or nature which the proceeding is designed to protect.
Agrico, supra at 482. The Agrico test has been adopted by this court in a number of cases. Florida Society of Ophthalmology v. State Bd. of Optometry, 532 So.2d 1279 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1333 (Fla. 1989); North Ridge Gen. Hosp. v. NME Hosps., Inc., 478 So.2d 1138 (Fla. 1st DCA 1985). In the instant case, the seriousness, degree, or timeliness of injury to be suffered by the petitioner, if their land is declared to be wetlands or needed for mitigation, is not seriously disputed.
The dispute concerns the second prong of the Agrico test. In determining how to apply this second prong of the Agrico test, we must analyze the appropriate purpose and scope of the proceeding, the type and nature of the injury, as well as the reasons for the Agrico test.
As we have previously stated, one of the issues to be determined within the scope of this permitting procedure was the extent of wetlands which were involved. The potential injury to appellants concerns their ability to use the land if it is determined to be wetlands. The issue of standing, thus, may be rephrased to read: Does a landowner have a substantial interest involved in a determination of the amount of environmentally sensitive land which is located on his property. Clearly, the answer is yes.
In applying the Agrico test, we must not lose sight of the reason for requiring a party to have standing in order to participate in a judicial or administrative proceeding. The purpose is to ensure that a party has a "sufficient interest in the outcome of the litigation which warrants the court's entertaining it" and to assure that a party has a personal stake in the outcome so he will adequately represent the interest he asserts. See General Dev. Corp. v. Kirk, 251 So.2d 284, 286 (Fla. 2nd DCA 1971). In referring to a case involving standing in a judicial proceeding, we are not unmindful that standing in administrative proceedings, unlike judicial proceedings, is defined by statute. We do, however, feel that such analysis is helpful in deciding how Agrico should be applied.
The obvious intent of Agrico was to preclude parties from intervening in a proceeding where those parties' substantial interests are totally unrelated to the issues which are to be resolved in the administrative proceedings. In Agrico, the only real interest of the proposed intervenor was to preclude competition. That interest was totally unrelated to the environmental issues to be decided in the permitting proceedings. That is not the situation in this case. The landowner has a direct and substantial interest in determining how much of his property should be considered to be wetlands.
DER and the county attempt to discount the landowner's interest in the use of his property by asserting that such an interest is merely economic, as in Agrico, rather than environmental. We reject the idea that the interests of the parties are comparable. The interests asserted by a landowner are more directly implicated in an environmental proceeding than the mere interest in precluding competition. We reject any interpretation of Agrico which would preclude a landowner from participating in proceedings involving the use of his own property.
While it was error to deny standing, an error involving standing to intervene in an administrative proceeding may be harmless where the party is provided a full opportunity to participate and present evidence, and the hearing officer rules on all issues which the intervenor may properly contest. First Hosp. Corp. of Florida v. Department of Health and Rehabilitative Servs., 589 So.2d 310 (Fla. *555 1st DCA 1991). Such is the case in the instant proceeding. Appellants were allowed to participate and present evidence. In addition, the hearing officer made specific findings of fact and conclusions of law concerning the extent of wetlands on appellants' property. The appellants were also allowed to file exceptions to the recommended order. Under these circumstances, the erroneous ruling concerning standing was harmless.
The last issue raised by the appellant which needs to be addressed concerns an allegation that DER improperly asserted wetlands jurisdiction over a portion of their property. The dispute focuses on the department's interpretation that the impoundment be considered wetlands, if it would have been wetlands but for the presence of mosquito control dikes.
As to this issue, the hearing officer found that "the area within the impoundment contains wetland indicator species which suggest that prior to the construction of the dikes ... the tract was a wetland area." The hearing officer also made several additional findings concerning the agency's jurisdiction over the area in dispute.
An agency may not extend its jurisdiction beyond its statutory authority. Cataract Surgery Center v. Health Care Cost Containment Bd., 581 So.2d 1359, 1360-1361 (Fla. 1st DCA 1991). The Florida Supreme Court, however, has specifically ruled that DER's dredge and fill jurisdiction as set forth in section 403.817 should be liberally interpreted in favor of the public. DER v. Goldring, 477 So.2d 532 (Fla. 1985). An agency's construction of the statutes it administers as to technical matters is entitled to great weight and is not to be overturned unless clearly erroneous. Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So.2d 716 (Fla. 1983); Shell Harbor Group, Inc. v. Department of Business Regulation, 487 So.2d 1141 (Fla. 1st DCA 1986). DER's interpretation of section 403.817, Florida Statutes, is reasonable. This interpretation allows for certain wetlands not to be considered jurisdictional, for instance, when a governmental mosquito control program caused the wetland. It also allows for certain lands to be considered wetland, and, therefore, subject to departmental jurisdiction, when the wetlands would have been considered jurisdictional but for the governmental mosquito control activity. This DER construction of section 403.817 can certainly not be considered clearly erroneous, especially considering the public's interest in protection of natural wetlands.
We therefore affirm.
BARFIELD, J., concurring with written opinion.
ZEHMER, J., dissenting in part with written opinion.
BARFIELD, Judge, concurring.
I concur in affirming the final order of the Department of Environmental Regulation (DER); however, in restating the issue concerning extent of mitigation I would carefully limit it to the facts of this case. I agree with Judge Wolf's conclusion that an administrative body does not have the power to review the discretionary decision of the local elected body concerning the reasonable necessity for lands to be condemned. This should not preclude the landowner from questioning the extent of mitigation required by DER in all administrative proceedings for dredge and fill permits ancillary to eminent domain proceedings. Quantity of mitigation was simply not an issue in this case over which DER had jurisdiction because of the discretion vested in the condemning authority.
In this case the condemnation of land was predicated on a quantity of land for mitigation agreed upon by the governing body and DER, the reasonableness of which the landowner could challenge in circuit court by attempting to show that DER in approving the project would have been satisfied with less land than called for in the proposed project. However, should the project call for less land than DER demanded, I suggest that the landowner would have standing in the administrative hearing to contest the quantity of mitigation.
*556 One troubling scenario is presented when the landowner successfully challenges in circuit court the extent of mitigation upon a showing of bad faith or abuse of discretion before permitting is completed, and then DER sets the extent of mitigation in excess of that approved in circuit court. It is at this point that traditional legal proceedings do not always neatly accommodate evolution in law. We should try to reconcile and accommodate the administrative and legal processes that affect environmental concerns in the state. This will be a recurring problem with the legislative concern for ecology. When the administrative process is determined by the legislature to be the more appropriate vehicle because of areas of expertise, the judiciary should consider giving way to those administrative determinations and having those determinations collaterally binding in the judicial arena.
Such an approach in this case would have deferred the question of quantity of mitigation to DER with the resulting binding effect of this factual determination on the court when it considered the issue of necessity for the overall project. In this case, all that had to be shown was that the condemning authority did not abuse its discretion, although the quantity of mitigation could exceed the minimum that would be required to obtain a dredge and fill permit.
ZEHMER, Judge, dissenting in part.
The issues presented in this case have been difficult to resolve, and despite extensive efforts to arrive at a consensus opinion in which all three panel members could agree, I remain unable to concur in several aspects of the majority's disposition of this case.
I concur with the majority opinion's holding that the administrative order under review erred in denying appellants standing to appear and litigate issues properly raised in this administrative permitting proceeding. I agree that appellants are persons substantially affected by the DER permitting order made necessary by the county's proposed road extension project due to the county's need for additional land from appellants to provide appropriate mitigation for injury to wetlands. I likewise concur in the holding that appellants were entitled to litigate the disputed issues concerning the extent of wetlands situated on their property and DER's jurisdiction over such lands.
Unlike the majority, however, I would also hold that appellants had standing in this administrative proceeding to litigate the scope and extent of the proposed mitigation  specifically, whether the county's proposed plan of mitigation accepted by DER required excessive use of land to accomplish the mitigation required by law. The majority has concluded that any issue concerning excessiveness of the proposed mitigation is appropriately litigated in the county's condemnation proceeding filed in circuit court to determine the necessity of the taking. I do not agree with the majority on this issue because, in my view, they have reached this conclusion by incorrectly restating the issue and then erroneously applying to the restated issue the otherwise unquestioned principle that an administrative agency cannot pass on the legality of the county's quasi-legislative decision to determine what lands are to be taken in an eminent domain proceeding.
The issue raised in this administrative proceeding by appellants is whether the county's mitigation plan accepted by DER calls for an excessive use of lands for mitigation in addition to the land necessary for the road project itself, so that the county is being compelled to condemn more of appellants' lands than may be necessary under the law governing the DER permitting process. The majority opinion, however, erroneously restates the issue to be: "Whether an administrative body (DER) has the power to review the discretionary decision of the local elected body concerning the reasonable necessity for lands to be condemned." This restated issue begs the question because the county's decision to take appellants' land is premised on the DER requirement that the county provide a specified level of additional lands for mitigation, and appellants challenge this plan as excessive. A decision on the correct extent of necessary mitigation in the administrative *557 permitting action, i.e., whether DER is accepting a plan calling for excessive mitigation, can be made only in this administrative proceeding. Manifestly, a decision on that question does not interfere at all with the county's exercise of its eminent domain power to condemn lands reasonably necessary to construct the road project.
Obviously, in the eminent domain suit, the county's taking of appellants' land for mitigation purposes can be shown to be reasonably necessary only by asserting that such land is required by the DER permit for mitigation purposes. Proof of the necessity to take appellants' land for mitigation is wholly dependant upon DER's administrative decision as to the land required under the permitting statutes it administers. This administrative decision is an inherent part of the permitting process and cannot be made in the eminent domain action. In view of appellants' challenge to the plan of mitigation, whether DER is requiring too little or too much land can be litigated only in a section 120.57 proceeding such as this one initiated by appellants to contest the county's application for the permit. The reasonable extent of required mitigation cannot be litigated in the circuit court condemnation proceeding, as held by the majority, because: (1) only the county and appellants are parties to the condemnation proceeding, and DER is not a party; (2) the county proves reasonable necessity for the condemnation by establishing that the DER permit requires the additional land for mitigation purposes; and (3) once the mitigation requirements have been finally determined administratively in a DER order, the circuit court has no jurisdiction to overturn that determination, since judicial review of DER's decision is limited in section 120.68 to review in an appropriate district court of appeal. Thus, this administrative proceeding is the only available avenue whereby appellants, as substantially affected property owners who have standing to participate in the permitting proceeding, can challenge the excessiveness of the mitigation being required by the DER permit.
To illustrate the fallacy underlying the procedure mandated in the majority opinion, let us suppose that in the county's eminent domain action the circuit court received evidence on and accepted appellants' challenge to the excessiveness of the mitigation plan, found that the extent of land being condemned for mitigation purposes was excessive under chapter 403 (the law being administered by DER in this permitting process), and declined to approve, as reasonably necessary, condemnation of all the land required under the DER permit. The county is thereby placed on the horns of a dilemma  it is not authorized to acquire the land needed under the DER permit, yet it cannot comply with conditions of the DER permit without obtaining the land to meet DER's mitigation requirements. The only rational solution to this quandary, it seems to me, is not litigation of the excessive mitigation issue in the court condemnation action as part of the constitutional issue of reasonable necessity, but litigation of all issues relating to excessive mitigation in the administrative permitting proceeding. No one disputes that the county can prove reasonable necessity in the condemnation proceeding for its proposed road project by establishing what is required under the DER permit. Since the county's determination of the additional land needed for mitigation is necessarily predicated on the DER permit requirements, having the excessive mitigation issue decided in the administrative action does not interfere in the slightest with the county's discretionary decision to determine the extent of property reasonably necessary to complete the proposed road project.
The hearing officer in this case ruled that appellants had no standing to litigate excessive mitigation in this proceeding. Although the hearing officer made findings of fact relevant to the extent of DER's jurisdiction over the wetlands in the mosquito impoundment area and appellants' land, no findings of fact were made on the disputed issues raised by appellants regarding excessive mitigation. DER approved and adopted the hearing officer's finding of facts and recommended conclusions *558 of law, including appellants' lack of standing, and issued its final order based thereon. Thus, the disputed issues over excessive mitigation have not been litigated in this proceeding, and no factual findings relevant to that issue have been made. Since the excessiveness issues cannot be appropriately litigated in the court condemnation suit and must be decided in this administrative proceeding (to which both DER and the county are parties), I would reverse and remand for further proceedings before the hearing officer at which appellants would be accorded the right to adduce evidence and to have findings of fact and conclusions of law made on their excessive mitigation dispute.
NOTES
[1] The county had not acquired title to the land at the time of the administrative proceedings below, but initiated a condemnation proceeding on July 10, 1990. An order of taking was issued on November 21, 1990. The order was appealed, and the case was pending before the Fourth District Court of Appeal at the time of oral argument. The fourth district has now affirmed the trial court's decision without opinion.
[2] A full discussion of the interrelationship between standing and the issues to be resolved in the administrative proceeding as required pursuant to Agrico Chemical Co. v. Department of Environmental Regulation, supra, will be undertaken later in this opinion.
[3] The authority of the governmental agency to seek the environmental permits prior to obtaining the necessary lands is not raised in this appeal. While it would appear that there may be a number of legitimate reasons for proceeding in this fashion (i.e., time limitations, desire for a more definite estimate of the land needed to accommodate project), it is unnecessary for us to reach this question.
[4] This is especially true when the discretion is being exercised by a local elected body of a home rule entity such as a county or city. See art. VII, Fla. Const.
[5] It may be argued that potential conflict between the agency and the circuit court could be avoided by allowing the administrative agency to expand its jurisdiction to consider both the proposed plan submitted by the appellant and alternatives submitted by the landowner; however, this would not actually resolve potential conflict. The circuit court and the agency would still be considering two different issues: The agency would be considering whether other alternatives would meet the permitting criteria, and the court would be determining, after all the factors have been considered, whether the local governing body abused its discretion in opting for the permitted plan. In addition, conflict has been kept to a minimum in the past when the condemning authority has proceeded in the traditional manner by first condemning the property. During the condemnation proceedings, the condemning authority can present testimony of agency officials or other experts in the field to demonstrate the reasonably contemplated conditions tied to the issuance of permit. Seadade Industries, supra. The procedure utilized in the instant case does not preclude either party from calling these same witnesses in a circuit court condemnation proceeding.