627 So.2d 1200 (1993)
BRASFIELD & GORRIE GENERAL CONTRACTOR, INC. and City of Tallahassee, Appellants,
v.
AJAX CONSTRUCTION COMPANY, INC., of Tallahassee, Appellee.
CITY OF TALLAHASSEE, Appellant,
v.
AJAX CONSTRUCTION COMPANY, INC. OF TALLAHASSEE and Brasfield & Gorrie, General Contractor, Inc., Appellees.
Nos. 93-2820, 93-2759.
District Court of Appeal of Florida, First District.
December 1, 1993.
Rehearings Denied January 10, 1994.
*1201 Dominic Caparello, Michael G. Maida of Messer, Vickers, Caparello, Madsen, Lewis, Goldman & Metz, P.A., Tallahassee, for appellant/City of Tallahassee.
Hume F. Coleman and Susan L. Turner of Holland & Knight, Tallahassee, for appellant/Brasfield & Gorrie.
Davisson F. Dunlap, Jr. and Bruce Culpepper of Pennington, Haben, Wilkinson, Culpepper, Dunlap, Dunbar, Richmond & French, P.A., Tallahassee, for appellee/Ajax.
DAVIS, Judge.
The City of Tallahassee and Brasfield & Gorrie (Brasfield) have appealed a trial court order enjoining the City from entering into a construction contract with Brasfield at an amount less than that contained in Brasfield's original bid on the contract. We reverse and remand with directions that the injunction be vacated.
In June 1993, the City issued an Invitation to Bid (I ) for the construction of a downtown parking garage and plaza. Seven bids were filed in response to the I, including bids by Brasfield and Ajax Construction Co. as a joint venture partner with Florida Developers, Inc. (A/F). The City then ranked the bids, assigning points based on the amount of the bid, and on Minority and Women's Business Enterprise (M/WBE) participation. Brasfield had the highest number of points, having made the lowest bid. Although A/F submitted the second lowest bid, it received no M/WBE points and thus had the lowest overall ranking by point total. None of the seven bids received by the City were within its projected budget for the project.
On June 30, 1993, the City indicated its intent to award the contract to Brasfield. By letter of July 1, 1993, A/F stated its intent to protest the award pursuant to section 3.18 of the City's "Administrative Policies and Procedures Manual" (Manual). A/F primarily disputed the City's calculation of its M/WBE points. On July 7, 1993, the City approved *1202 Brasfield's selection as low bidder, and authorized negotiations in an attempt to bring Brasfield's bid price within the City's originally projected budget.
On July 8, 1993, A/F filed a formal bid protest with the Department of General Services (DGS). The protest focused primarily on the City's evaluation of A/F's M/WBE qualifications, but also raised the City's negotiations with Brasfield after announcing its intent to award the contract. A/F claimed that the negotiations improperly denied it the opportunity to bid on the project after any adjustments in its scope and sought either the award of the contract, or a re-bid incorporating the changes made in the negotiations. DGS rejected A/F's protest on July 13, 1993. Although section 3.18 of the Manual provided for an appeal of the ruling to the City Manager within 72 hours, A/F did not pursue such an appeal. Rather, on August 11, 1993, Ajax Construction Co. (Ajax) alone filed the instant complaint for injunctive relief.
Ajax's complaint alleged the same two grounds for relief alleged in A/F's formal bid protest, to wit: 1) erroneous evaluation by the City of Ajax's M/WBE status, and 2) the City's misuse of its competitive bidding process to select a low bidder with whom to further negotiate. Ajax sought temporary and permanent injunction against both continued negotiations with, and award of the contract to, Brasfield, as well as a declaration that the City misapplied its M/WBE policy, giving Ajax the highest point total and entitling it to an award of the contract.
The City responded to the complaint, alleging that Ajax could not meet two of the requirements for the granting of a temporary injunction, to wit: 1) a clear legal right to relief, and 2) substantial likelihood of success on the merits of its claim that the City had misused its bid process. As to the former requirement, the City argued that Ajax had no standing to prosecute the claim in the absence of the joint venture partner (Florida Developers, Inc.) with whom Ajax had bid on the contract. As to the latter, the City argued that there was no evidence that it had acted arbitrarily, capriciously, fraudulently or illegally in its handling of the bid process.
The trial court heard the complaint on August 20, 1993. Ajax conceded that the absence of its joint venture partner precluded an award of the contract to it. It nevertheless maintained that, because it was a "general contractor in Tallahassee," it had standing to challenge the City's alleged departure from its stated bidding procedures. The trial court agreed that the absence of Florida Developers, Inc. from the suit precluded "affirmative relief," but found that Ajax had standing to challenge the City's bid process based on its status as 1) a general contractor engaged in commercial general contracting in Tallahassee, and 2) a partner in a joint venture which bid on the project.
Ajax proceeded to argue that the City's bid policies did not permit its use of the process merely to select a company with whom to negotiate. The City countered that the bid policies had never been formally adopted and that they thus were not bound to follow them strictly. The court rejected that position, finding that, because the City had undertaken to use a competitive bidding procedure, it was bound to follow it. The court thereafter held that the City had "subverted" its bid process by using it to select a company with whom to negotiate, and had thus acted "arbitrarily and capriciously." It entered a written order on August 25, 1993, granting a temporary injunction prohibiting the City, not from contracting with Brasfield, but from contracting with it at a price less than Brasfield originally bid. The City and Brasfield have appealed.
We find that the threshold issue of these appeals is Ajax's standing to seek injunctive relief against the award of a contract on which it did not bid. Ajax concedes that, in the absence of its joint venture partner, Florida Developers, Inc., it did not have standing to seek an award of the contract. It also firmly denies on appeal that it was seeking (or entitled to) taxpayer standing. That leaves the sole issue of whether, as a nonbidding "construction company in Tallahassee," it is entitled to seek an injunction under the facts of this case.
The reason for requiring a party to have standing to participate in a judicial or *1203 administrative proceeding is to ensure that it has a "sufficient interest in the outcome of the litigation which warrants the court's entertaining it," and to assure that it has a personal stake in the outcome so it will adequately represent the interest it asserts. Gregory v. Indian River Co., 610 So.2d 547, 554 (Fla. 1st DCA 1992). In Ft. Howard Co. v. Department of Management Services, 624 So.2d 783 (Fla. 1st DCA 1993), this court found that a non-bidder was correctly denied standing to protest the process by which a bid was awarded. Here, although Ajax "prequalified" to bid on the contract, it alone never entered a bid thereon. Therefore, although standing was not an issue in the formal bid protest filed by bidder A/F, Ajax would not have had standing under Ft. Howard to protest the award of the bid to Brasfield.
The injunctive suit herein, virtually identical to the bid protest in its grounds and relief sought, was in our view an attempt by Ajax to accomplish that which it would not have had standing to accomplish as a bid protester. The trial court found standing "as a construction company in Tallahassee," and Ajax claims the "sufficient interest" that, if the City cannot award the contract to Brasfield, Ajax can participate in any re-bid of that contract. However, a non-bidder, who is not and cannot potentially be a party to the contract with the public body, is not entitled to the relief of either an award of the contract, or a re-bid. Ft. Howard. Further, it would be purest speculation for us to conclude that a company which did not bid on a contract would be capable of securing and performing that contract on any re-bid.[1] Based on the foregoing, we find that Ajax did not have standing to seek the injunction awarded herein.
However, assuming arguendo that Ajax had standing to do so, we reject the trial court's finding that the City's actions in this case were arbitrary and capricious and in "subversion" of the bid process set forth in the Manual. Section 3.2 thereof, Right of Rejection, provides that:
The City of Tallahassee reserves the right to reject any one or all bids, or any part of any bid, to waive any informality in any bid, and to award the purchase in the best interest of the City of Tallahassee (emphasis supplied).
We find that the City's actions herein were within the scope of this provision, and thus that it acted within its wide discretion in soliciting and accepting bids for public improvements. An honest exercise of that discretion will not be overturned even if it may appear to be erroneous and even if reasonable persons may disagree. Department of Transportation v. Groves-Watkins Constructors, 530 So.2d 912 (Fla. 1988); Liberty County v. Baxter's Asphalt & Concrete, Inc., 421 So.2d 505 (Fla. 1982).
Based on the foregoing, we find that the temporary injunction herein was issued in error. We reverse and remand with directions that the injunction be vacated.
ZEHMER, C.J., and SHIVERS, Senior Judge, concur.
NOTES
[1] We note on this point that the bid which Ajax did enter as a joint venture partner with Florida Developers, Inc. finished seventh out of the seven bids made. This hardly lends credence to Ajax's argument that it has an interest substantial enough to accord it standing in this case. See, e.g., Westinghouse Electric Corp. v. JTA, 491 So.2d 1238 (Fla. 1st DCA 1986).