898 So.2d 134 (2005)
The WICCAN RELIGIOUS COOPERATIVE OF FLORIDA, INC., Appellant,
v.
Jim ZINGALE and The Florida Department of Revenue, Appellee.
No. 1D03-3324.
District Court of Appeal of Florida, First District.
March 8, 2005.
Rehearing Denied April 14, 2005.
*135 Heather Morcroft, Orlando, for Appellant.
Charlie Crist, Attorney General; Eric J. Taylor, Senior Assistant Attorney General and Nicholas Bykowsky, Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellees.
PER CURIAM.
Appellant, The Wiccan Religious Cooperative of Florida, Inc., brought various constitutional challenges against sales tax exemption statutes and alleged that it was improperly and unlawfully denied a renewal of its certificate of exemption from Florida sales and use tax. The trial court granted the appellee Florida Department of Revenue's motion for summary judgment, ruling that Wiccan had standing and that the challenged statutes were constitutional.[1] The trial court also ruled that Wiccan failed to exhaust its administrative remedies regarding obtaining a renewal of its certificate of exemption. Wiccan appeals only the trial court's ruling that section 212.06(9), Florida Statutes, is facially constitutional, arguing that the trial court erred because the statutory tax exemption clearly violates the United States Constitution Establishment Clause and Free Press Clause pursuant to Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). As part of its response, the Department argues that Wiccan is without standing to bring such a challenge. We agree.
"[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." Flast v. Cohen, 392 U.S. 83, 99-100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). A proper party is essential to prevent the courts from deciding" `illdefined controversies over constitutional issues.' "Id. at 100, 88 S.Ct. 1942; see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 473, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) (stating that the courts have declined to hear cases that "would convert the judicial process into `no more than a vehicle for the vindication of the value interests of concerned bystanders'"); Poe v. Ullman, 367 U.S. 497, 505, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (stating that declining to hear cases where the challenging party is without standing is "`a safeguard essential to the integrity of the judicial process'"); Brasfield & Gorrie Gen. Contractor, Inc. v. Ajax Constr. Co., Inc. of Tallahassee, 627 So.2d 1200, 1202-03 (Fla. 1st DCA 1993) (stating that the reason for requiring a party to have standing *136 is to ensure that the party "will adequately represent the interest it asserts").
In the instant case, Wiccan's constitutional challenge is that, based on the reasoning found in Texas Monthly, the Florida sales tax exemption benefits religion. The parties have stipulated that Wicca is a religion. Therefore, under Wiccan's argument that the tax exemption benefits religion, Wiccan, as a religious organization, benefits from the sales tax exemption. Accordingly, Wiccan fails to have the adverse interest necessary for standing and is not the proper party to assert the instant constitutional challenge. See Valley Forge Christian Coll., 454 U.S. at 473, 102 S.Ct. 752 (stating that a party must allege facts showing that he or she has been adversely affected); Congress of Indus. Orgs. v. McAdory, 325 U.S. 472, 475, 65 S.Ct. 1395, 89 L.Ed. 1741 (1945) (stating that the Court will not pass upon the constitutionality of legislation when the party bringing the suit cannot assert antagonistic rights); State v. Benitez, 395 So.2d 514, 517 (Fla.1981) (stating that a party cannot challenge a statutory enactment that does not adversely affect that party's personal or property rights); Chamberlin v. Dade County Bd. of Pub. Instruction, 171 So.2d 535, 537 (Fla.1965) (holding that parents who brought suit challenging certain religiously-related practices in public schools were without standing to challenge religious practices at baccalaureate programs because their children, who were enrolled in elementary schools, were not adversely affected by the challenged practice); Alachua County v. Scharps, 855 So.2d 195, 201 (Fla. 1st DCA 2003) (stating that a party who is not adversely affected by the statute he or she seeks to challenge does not have standing).
The dissent opines that the court cannot consider Wiccan's lack of standing as an appealable issue because the Department failed to file a cross-appeal. We disagree. Generally, a cross-appeal must be filed to challenge an unfavorable portion of a final judgment substantially favorable to the appellee. See Smeaton v. Smeaton, 678 So.2d 501, 501 n. 1 (Fla. 1st DCA 1996). However, this rule is procedural, not jurisdictional, and can be waived. See Walker v. State, 457 So.2d 1136, 1137 (Fla. 1st DCA 1984) (ruling that "[b]ecause the court gains jurisdiction over the entire cause at the time the notice of appeal is filed, neither the timely filing of a notice of cross appeal, nor the failure to timely file such a notice will affect the jurisdiction of the appellate court"). This permits an issue to be heard by waiver and consent, which occurred here. Both parties briefed the standing issue without objection. Furthermore, standing was argued, almost exclusively, during oral argument without objection. Accordingly, we conclude that the issue is before this court and we are not barred from considering standing in deciding this appeal as asserted by the dissent.
Therefore, we reverse, vacate the final judgment, and remand to the trial court with directions to enter final summary judgment in favor of the Department on the basis that Wiccan does not have standing.
REVERSED and REMANDED with instructions.
BROWNING and POLSTON, JJ., Concur; BENTON, J., Concurs in Part and Dissents in Part with Opinion.
BENTON, J., concurring in part and dissenting in part.
An exemption that is central to a statutory scheme purporting to authorize a discriminatory tax on the sale, use and distribution of publications, based explicitly on their content, does not conform to federal constitutional requirements. Section *137 212.06(9), Florida Statutes (2003), provides:
The taxes imposed by this chapter do not apply to the use, sale, or distribution of religious publications, bibles, hymn books, prayer books, vestments, altar paraphernalia, sacramental chalices, and like church service and ceremonial raiments and equipment.
§ 212.06(9), Fla. Stat. (2003). Finding no impediment to deciding the First Amendment questions appellant raises, I concur in reversing the judgment below to the extent it declared constitutional section 212.06(9)'s exemption of "religious publications, bibles, hymn books [and] prayer books."

I.
Here, as below, the contention is that section 212.06(9) runs afoul of both the Free Press and the Establishment Clauses of the First Amendment, applicable to the states by virtue of the Fourteenth Amendment. In holding constitutionally infirm an analogous sales and use tax exemption in North Carolina, the Fourth Circuit explained why a statute like section 212.06(9), insofar as it exempts religious publications, bibles, hymn books and prayer books, is unconstitutional:
In Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), the Supreme Court held that a Texas sales and use tax exemption which applied to religious literature, but not to other types of literature, violated the establishment clause of the first amendment to the Constitution.[FN10] We agree with the appellants that this case presents a more untenable violation of the establishment clause because the Exemption specifically applies to "Holy Bibles," a religious text sacred only to members of Christian faiths.
FN10. Justices Brennan, Marshall and Stevens expressed their view that Texas' sales tax exemption for religious publications violated the establishment clause, that the exemption was not compelled by the free exercise clause, and that the Court need not determine whether the exemption contravened the free press clause as well. Justices Blackmun and O'Connor agreed that the exemption violated the establishment clause, but believed that it was unnecessary to decide whether the exemption was required by the free exercise clause. Justice White concurred in the judgment, opining that the exemption, because of its content-based discrimination, violated the free press clause. Justice Scalia, joined by Chief Justice Rehnquist and Justice Kennedy, dissented, expressing the opinion that the exemption violated neither the establishment clause nor the free press clause, and that the court's decision effectively overruled prior Supreme Court cases based on an accommodation of religion. The tax exemption at issue in Texas Monthly applied to: "Periodicals that are published or distributed by a religious faith and that consist wholly of writings promulgating the teaching of the faith and books that consist wholly of writings sacred to a religious faith." Tex.Tax Code Ann. § 151.312 (1982).
The Exemption also violates the free press clause of the Constitution. In Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987), the Supreme Court concluded that an Arkansas sales tax scheme, which exempted from taxation some but not all classes of magazines,[FN11] violated the first amendment's guarantee of freedom of the press because of its content-based discrimination. *138 The Court noted that "even where, as here, there is no evidence of an improper censorial motive . . . selective taxation of the press  either singling out the press as a whole or targeting individual members of the press  poses a particular danger of abuse by the State." Id. at 228, 107 S.Ct. at 1727. The Court concluded that "the Arkansas sales tax cannot be characterized as nondiscriminatory, because it is not evenly applied to all magazines," and that "the basis on which Arkansas differentiates between magazines is particularly repugnant to first amendment principles: a magazine's tax status depends entirely on its content." Id. at 229, 107 S.Ct. at 1727 (emphasis in original). In the instant case, the Exemption differentiates between a Christian sacred text and other publications, both sacred and non-sacred and Christian and non-Christian. This distinction forces the State to discriminate on the basis of the contents of a book, text or other published work, which is intolerable under the first amendment. The Secretary argues that, despite its plain wording, she has attempted to apply the Exemption in a constitutional manner by interpreting it so that any sacred scriptures of any religion can qualify for the exemption upon proper review and consideration.[FN12] However, it is precisely this type of "official scrutiny of the content of publications as the basis for imposing a tax" that is so repugnant to the free press clause of the Constitution. Id. at 230, 107 S.Ct. at 1728 (citing Regan v. Time, Inc., 468 U.S. 641, 648, 104 S.Ct. 3262, 3266, 82 L.Ed.2d 487 (1984)).
FN11. The magazine exemption covered "religious, professional, trade and sports journals and/or publications printed and published within this State . . . when sold through regular subscriptions." Ark.Stat.Ann. § 84-1904(j) (1980) (since recodified as amended at Ark.Stat.Ann. § 26-52-401(14) (1987)).
FN12. It appears from the record in this case that the Secretary will not extend the Exemption to other sacred literature "without first reviewing said publication." See Joint Appendix at 16.
Thus, the Exemption is unconstitutional because it contravenes the establishment clause under the reasoning of Texas Monthly, and violates the free press clause under the rationale of Arkansas Writers' Project.

Finlator v. Powers, 902 F.2d 1158, 1162-63 (4th Cir.1990). Insofar as section 212.06(9), Florida Statutes (2003), exempts "religious publications, bibles, hymn books [and] prayer books," it, too, "contravenes the establishment clause under the reasoning of Texas Monthly, and violates the free press clause under the rationale of Arkansas Writers' Project." Finlator, 902 F.2d at 1163.
Florida's exemption for "religious publications" is broader than North Carolina's exemption for Holy Bibles, but the relative breadth of the Florida exemption does not obviate Establishment Clause concerns. See Everson v. Bd. of Educ., 330 U.S. 1, 15, 67 S.Ct. 504, 91 L.Ed. 711 (1947) ("The `establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can. . . . pass laws which aid one religion, aid all religions, or prefer one religion over another."). The imprecise reach of an exemption for "religious publications" is bound to create problems in its everyday administration. Does Hermann Hesse's Siddhartha qualify? Or Nikos Kazantzakis's The Last Temptation of Christ? As a practical matter, it falls to booksellers to decide by their own, idiosyncratic lights  at least in the first instance *139  which publications are "religious" and which are not.

II.
The majority opinion does not, indeed, suggest that section 212.06(9) passes constitutional muster. Instead, it avoids reaching the First Amendment questions on grounds that are logically and legally unavailable in the procedural posture of the case, and that are dubious in their own right. To the extent the majority opinion considers the question of standing, concludes that the appellant lacks standing because it is a religious organization, and orders disposition on remand accordingly, I respectfully dissent.

A.
The trial court ruled that The Wiccan Religious Cooperative of Florida, Inc. (Cooperative) "has standing to challenge the constitutionality of Section [ ] 212.06(9) . . ., Florida Statutes (2003)." Whether this ruling is correct  I do not believe the majority opinion demonstrates otherwise  or not, it is not properly before us for review. The Department of Revenue could have cross-appealed the trial court's ruling on standing, and could have argued on cross-appeal that the final judgment should have been reversed or vacated on the ground that the Cooperative lacked standing. But the Department did not do so. It has consistently argued, not for reversal of any part of the judgment below, but for affirmance of the judgment, including the trial court's declaration that the statute is constitutional. The Department never took a cross-appeal.
The decision that the Cooperative had standing was an integral part of the judgment, and a necessary predicate to the declaration of constitutionality that the Department asks us to uphold. In "the absence of a cross appeal, the appellee . . . may not seek affirmative relief from any part of the order" or judgment. Philip J. Padovano, Florida Appellate Practice, § 21.9, at 342 (2005 ed.) (emphasis supplied). See Premier Indus. v. Mead, 595 So.2d 122, 124 (Fla. 1st DCA 1992) ("These rule provisions are mandatory and failure of a party to comply therewith constitutes a waiver of the right to attack the validity of the order [or any part thereof] being reviewed on appeal."); A-1 Racing Specialties, Inc. v. K & S Imps. of Broward County, Inc., 576 So.2d 421, 422 (Fla. 4th DCA 1991) ("The appellee did not file a notice of cross appeal yet there were arguments in the answer brief demanding affirmative relief. . . . The appellee thereby violated Florida Rules of Appellate Procedure 9.110(g) and 9.210(c).").
The majority opinion cites a single case for its perhaps unprecedented ruling that no notice of cross-appeal is necessary, in order for relief to be granted on cross-appeal. Citing Walker v. State, 457 So.2d 1136, 1137 (Fla. 1st DCA 1984), the majority opinion states that "this rule [then Fla. R.App. P. 9.140(c)(2), now 9.140(c)(3)] . . . can be waived." But the Walker court held only that "the filing period may be extended for good cause." 457 So.2d at 1137. In Walker, the court explained
this does not mean the period will be extended automatically or in every case. In most cases, the court will expect the time limits for filing to be complied with. However, when defendant will not suffer prejudice or be deprived of adequate notice, the court may, in its sound discretion, allow the state to file an untimely notice of cross appeal.
Id. The Walker court did not hold that a cross-appeal can be dispensed with altogether, only that an appeals court may allow late filing of a notice of cross-appeal for good cause. The only other case the majority opinion cites in this connection *140 affords, if possible, less support for blatantly disregarding the venerable requirement that a cross-appellant file a notice of cross-appeal. See Smeaton v. Smeaton, 678 So.2d 501, 501 n. 1 (Fla. 1st DCA 1996) ("The wife did not file a cross appeal; therefore, we are unable to address the special equity granted to the husband.").

B.
The Cooperative proved it paid taxes it would not have had to pay if the contents of books it purchased had been deemed to fall within the section 212.06(9) exemption. Although it also purchased copies of the Bible and the Koran on which no sales tax was paid, it was required to pay sales tax when it purchased copies of the Satanic Bible and the Witches Bible, just as any individual purchaser would have been required to do. See generally Dep't of Admin. v. Horne, 269 So.2d 659, 662-63 (Fla.1972) (citing Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)); Paul v. Blake, 376 So.2d 256, 258 (Fla. 3d DCA 1979) (holding "a county taxpayer has standing to bring a declaratory decree and injunctive action against public officials of the county when the action seeks to enjoin the grant of certain tax exemptions [given to other taxpayers in the county] on the ground that such exemptions violate specific limitations on the county's authority to grant tax exemptions imposed by the Florida Constitution"). The Cooperative is a consumer of ideas as well as (presumably) a purveyor of ideas: The record shows it was a book purchaser, not a book publisher.
Part of the constitutional difficulty with section 212.06(9) is the uncertainty it creates about just which ideas a book must express, in order for its purchase to escape the tax. See generally State v. Ashcraft, 378 So.2d 284, 285 (Fla.1979) (noting that "overbreadth of a law may have a chilling effect on the exercise of first amendment freedoms"). Given the pall this uncertainty casts, pursuing tax refunds book by book in individual cases would not afford an adequate remedy for the constitutional harm. See Metro. Dade County v. Dep't of Commerce, 365 So.2d 432, 433 (Fla. 3d DCA 1978) (holding declaratory relief available in circuit court against an administrative agency "where a party's constitutional rights are endangered"); State ex rel. Dep't of Gen. Servs. v. Willis, 344 So.2d 580, 590 (Fla. 1st DCA 1977) (recognizing that "the promised administrative remedy [may be] too little or too late. In that case equitable power of a circuit court must intervene," and citing 3 K. Davis, Administrative Law Treatise 69 (1958)).
The Cooperative proved it suffered actual injury even if the tax authorities might eventually have disagreed with the sales clerk as to whether the books on which it paid tax were exempt. "Generally, where administrative remedies are available, it is improper to seek relief in the circuit court before those remedies are exhausted. Schl. Bd. of Flagler County v. Hauser, 293 So.2d 681 (Fla.1974); Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 689 So.2d 1127, 1129 (Fla. 1st DCA 1997); Fla. Dep't of Envtl. Prot. v. PZ Constr. Co., Inc., 633 So.2d 76, 78 (Fla. 3d DCA 1994)." Fla. Dep't of Agric. & Consumer Servs. v. City of Pompano Beach, 792 So.2d 539, 545 (Fla. 4th DCA 2001). In theory an application for tax refund might succeed, but pursuing such a course here could well aggravate, not ameliorate, the Cooperative's fiscal injury in fact, given the small amount of tax it paid.
While I would not reach the standing question, I do not share the majority opinion's views on the subject. The gist of the majority opinion's argument is that, although presumably any individual, or perhaps a league of atheists (because they are *141 not religious), has standing to challenge this tax scheme as discriminatory, the Cooperative cannot maintain a challenge, because "Wicca is a religion." Raising more questions than it answers, the majority opinion states:
The parties have stipulated that Wicca is a religion. Therefore, under Wiccan's argument that the tax exemption benefits religion, Wiccan, as a religious organization, benefits from the sales tax exemption. Accordingly, Wiccan fails to have the adverse interest necessary for standing and is not the proper party to assert the instant constitutional challenge.
Does this mean that a synagogue cannot question the legality of using public money for a creche in the courthouse if a Star of David is installed? Would a Muslim congregation have standing, given Islam's view of Jesus as prophet? Whatever else may be said about the majority opinion's approach to standing, it discriminates against organizations because they are religious. This is not in keeping with our traditions.

III.
The standing question, which was not the subject of any cross-appeal, is not before us, and I dissent from the majority opinion's consideration of the question. The lower court's ruling on standing should not be disturbed. The trial court erred in declaring section 212.06(9) facially constitutional and upholding its constitutionality insofar as it exempts "religious publications, bibles, hymn books [and] prayer books," for the reasons set out in Part I. On that basis, I concur in reversing the trial court's judgment pro tanto.
NOTES
[1] The trial court ruled that Wiccan is not being discriminated against in comparison to other religions. Wiccan did not appeal that ruling.