581 So.2d 1359 (1991)
CATARACT SURGERY CENTER, Cortez Foot Surgery Center, Ambulatory Surgery Center of Bradenton, Tampa Out-Patient Surgical Facility, Naples Day Surgery, Ambulatory Surgery Center, Specialty Surgery Center, and Tallahassee Single Day Surgery, Appellants,
v.
HEALTH CARE COST CONTAINMENT BOARD, Appellee.
No. 90-02205.
District Court of Appeal of Florida, First District.
June 6, 1991.
Rehearing Denied July 16, 1991.
Louise T. Jeroslow, Martin J. Kurzer and Joshua D. Lerner, Matzner, Ziskind, Hermelee & Jaffee, P.A., Miami, for appellants.
*1360 Julia P. Forrester, General Counsel, Health Care Cost Containment Bd., Tallahassee, for appellee.
WOLF, Judge.
Before us is an appeal from a challenge to the validity of the Health Care Cost Containment Board's (HCCCB) proposed rules 10N-6.002, 10N-6.003, 10N-6.004, 10N-6.005, and 10N-6.006, Florida Administrative Code, relating to collection of data from freestanding ambulatory surgery centers. The hearing officer upheld the validity of the proposed rules. Appellants, freestanding ambulatory surgical centers, allege that the hearing officer erred in upholding the validity of the proposed rules because (1) the HCCCB lacks the statutory authority to require the collection and submission of 45 data items from all patients of freestanding ambulatory surgical centers, and (2) the economic impact statement is fatally deficient. We find merit in both of appellants' contentions, and reverse.
On March 23, 1990, the HCCCB published the Notice of Proposed Rulemaking as required by section 120.54, Florida Statutes. The notice stated that the proposed rules would provide for the collection of 45 data items on a quarterly basis by computer tape or diskette from all freestanding ambulatory surgery centers and hospitals providing ambulatory surgery services; the stated purpose, "to accomplish the board's legislative mandate to collect data and conduct analysis and studies relating to health care costs and to meet the requirement that the board report to the governor and the Legislature the extent to which shifts from institutional to ambulatory care may be affecting health care costs." In the notice, the HCCCB identified their statutory authority for the proposed rules as sections 407.003, 407.03, 407.07, and 407.08, Florida Statutes (1990).
In preparing the economic impact statement (EIS) for the notice, the HCCCB sent survey requests to all freestanding and hospital-based ambulatory surgery centers. Based upon an analysis of these surveys, the HCCCB made an estimate of the cost of initial compliance with the data submission requirements. The surveys did not deal with ongoing costs of compliance. The only reference to ongoing costs in the EIS was that "[o]ngoing costs will be substantially less after the initial development of the program." At the hearing on the rule challenge, appellants presented several witnesses concerning these ongoing costs. Their evidence demonstrated that in a number of cases these costs would be substantial. The EIS also indicated that there was no anticipated effect on small business. Following the hearing on the proposed rules, the hearing officer determined that there was legislative authority for the rules and that any defect in the EIS was harmless.
An agency rule may be declared to be an invalid exercise of delegated legislative authority if, among other things,
The agency has materially failed to follow the applicable rulemaking procedures set forth in s. 120.54;
The rule enlarges, modifies, or contravenes the specific provisions of law implemented, citation to which is required by s. 120.54(7); or
The rule is arbitrary or capricious.
§ 120.52(8)(a), (c) and (e), F.S. (1989). In the instant case, we are asked to determine whether the provisions of chapter 407, Florida Statutes, allow the the HCCCB to exercise regulatory authority (require submission of data) over freestanding ambulatory surgical centers. A reading of the entire chapter indicates that the HCCCB does not have this authority. We do not believe the cited sections indicated by the HCCCB confer jurisdiction upon it.
An agency's construction of the statute it administers is entitled to great weight and is not overturned unless clearly erroneous. Pan American Airways, Inc. v. Florida Pub. Serv. Comm'n, 427 So.2d 716 (Fla. 1983).[1] An agency is given broad *1361 discretion in the exercise of its lawful authority and the burden is on a petitioner to demonstrate that a rule is arbitrary and capricious. Department of Professional Regulation, Bd. of Medical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984).
A slightly different analysis takes place, however, where the jurisdiction of the agency is in question. An agency may not enlarge, modify, or contravene legislative pronouncements. § 120.52(8), F.S. (1989); United States Shoe Corp. v. Department of Professional Regulation, Bd. of Opticianry, 578 So.2d 376 (Fla. 1st DCA 1991). This court held in Florida League of Cities, Inc. v. Department of Insurance and Treasurer, 540 So.2d 850 (Fla. 1st DCA 1989), that proposed rules which expand the authority of the state agency beyond that established by the statutory scheme were invalid.[2] Any attempt by an agency to extend or enlarge its jurisdiction beyond its statutory authority will be declared to be invalid. Board of Trustees of Internal Improvement Trust Fund v. Board of Professional Land Surveyors, 566 So.2d 1358 (Fla. 1st DCA 1990); Board of Optometry v. Florida Medical Ass'n, 463 So.2d 1213 (Fla. 1st DCA 1985), rev. denied, 475 So.2d 693 (Fla. 1985). Regulatory jurisdiction of an agency may only be exercised when authorized by law. Department of Health and Rehabilitative Services v. Florida Psychiatric Soc'y, Inc., 382 So.2d 1280 (Fla. 1st DCA 1980). In determining whether the agency has enlarged upon its statutory authority, the court may look at the entire statutory framework as well as the specific provisions cited as statutory authority. United States Shoe Corp., supra, 578 So.2d at 377.
Section 407.03(1), Florida Statutes (1989), gives the board the power to
adopt, amend, and repeal rules respecting the exercise of the powers conferred by this chapter which are applicable to the promulgation of rules.

(Emphasis added). The general grant of rulemaking power quoted above is of limited help, however, in determining an agency's specific jurisdiction or authority. It is of little legal significance because it is generally a restatement of the common law concerning agency powers. State Dep't of Ins. v. Insurance Serv. Office, 434 So.2d 908, 910 (Fla. 1st DCA 1983), rev. denied, 444 So.2d 416 (Fla. 1984). In fact, in light of the underlined language above, the general grant of power to the HCCCB in this case may be viewed as more limited than the general authority given to many agencies. The grant of power to the HCCCB appears to only apply where specific sections of the chapter confer such rulemaking power.
The other sections relied on by the board as statutory authority for its rulemaking power are sections 407.003, 407.07, and 407.08, Florida Statutes. The relevant portions are quoted below.
Section 407.003(1)(a) and (d) provides as follows:
(1) It is the intent of the Legislature to assure that adequate health care is affordable and accessible to all the citizens of this state. To further the accomplishment of this goal, the Health Care Cost Containment Board is created to:
(a) Advise the Governor, the President of the Senate, and the Speaker of the House of Representatives regarding health care costs, inflationary trends in health care costs, the impact of health care costs on the state budget, the impact of hospital and other provider charges, and third-party *1362 reimbursement mechanisms on health care costs.
(d) Recommend to the Governor, the President of the Senate, and the Speaker of the House of Representatives appropriate strategies necessary to foster health care cost containment and improve access to health care services.
Section 407.07(1)(a) provides as follows:
(1) The board shall have the authority to:
(a) Collect data and conduct analyses and studies relating to health care costs, making maximum use of local health councils and the designated state health planning agency whenever appropriate.[3]
Section 407.08 provides as follows:
On or before March 1 of each year, the board shall prepare and transmit to the Governor and the Legislature a report ... [to include] the extent to which other factors in the health care marketplace may be affecting health care costs, including ... shifts from institutional to ambulatory care... .
At first glance, these sections may appear to give the HCCCB authority to gather information from all portions of the health care industry. When read in para materia with the rest of chapter 407, however, it is apparent that the Legislature intended that information would be provided by hospitals and nursing homes. Chapter 407 provides a detailed framework of regulation and reporting requirements for hospitals and nursing homes, but there is no indication of legislative intent to allow the HCCCB to exercise jurisdiction over freestanding ambulatory surgery centers.
Section 407.02(1) mandates that the board adopt rules requiring hospitals to submit information which is essential to budget review and approval. The HCCCB is to gather all information from hospitals which is necessary to carry out its statutory responsibility to provide public information and education. This subsection also goes into detail concerning what data may be required from hospitals. Section 407.025, Florida Statutes (1989), grants hospitals immunity from any liability as a result of reporting patient data to the HCCCB. Section 407.05(1), Florida Statutes (1989), allows the HCCCB to set up a uniform system of financial reporting for hospitals. The rest of this subsection sets out with specific detail what hospitals shall file with the HCCCB. Section 407.09, Florida Statutes (1989), requires the board to report to the public on hospital charges.
Section 407.30-407.34, Florida Statutes (1989), contains a similar regulatory framework for nursing homes. Section 407.30, Florida Statutes (1989), sets forth the legislative intent to control costs in nursing homes, and finds that the HCCCB is "the agency best qualified" to monitor, collect, and analyze data from nursing homes. Section 407.31, Florida Statutes (1989), provides for a uniform system of financial reporting for nursing homes. This section also provides a detailed method of reporting on individual patients. The HCCCB is also required to analyze nursing home financial reports and provide information to consumers regarding the cost of nursing home care.
In stark contrast to this detailed scheme of regulation is the total silence of chapter 407 in regard to providing authority to collect, or establishing a method of collecting information from freestanding ambulatory centers. In fact, chapter 407 does not demonstrate any relationship between the HCCCB and freestanding ambulatory surgical centers. Section 407.002, Florida Statutes (1989), defines hospitals and nursing homes, but does not define ambulatory surgical care centers; section 407.01, Florida Statutes, provides for membership on the HCCCB by the profit and not-for-profit hospitals as well as nursing homes, but there is no representation on the board from freestanding ambulatory surgery centers.
In light of the specific regulatory authority given to the HCCCB over hospitals and nursing homes, including the specific authority to collect data from hospitals and nursing homes, the specific statutory language concerning what data must be collected, and how the data is to be utilized in *1363 providing public information, we find that the language in section 407.08, Florida Statutes, which refers to the HCCCB's responsibility to report "shifts from institutional to ambulatory care," is totally inadequate authority to assert jurisdiction over freestanding ambulatory surgical centers. We specifically decline to infer that an agency may require detailed and expensive reporting from any business which may have information relevant to the agency's purpose in situations where the agency is given no other regulatory authority, and where there is no specific legislative authority to require the collection of such data.
We next deal with the validity of the economic impact statement. Section 120.54(2)(b) requires an agency which is adopting a rule to prepare a detailed economic impact statement which must include, "an estimate of the cost or economic benefit to all persons directly affected by the proposed action," and "an analysis of the impact on small business as defined in the Florida Small and Minority Business Assistance Act of 1985."
The purpose of an economic impact statement is "to promote agency introspection in administrative rulemaking; to ensure a comprehensive and accurate analysis of economic factors, which factors will work together with social factors and legislative goals underlying agency action; to direct agency attention to key considerations and thereby facilitate informed decision making." Department of Health and Rehabilitative Servs. v. Wright, 439 So.2d 937, 940 (Fla. 1st DCA 1983), citing Florida-Texas Freight, Inc. v. Hawkins, 379 So.2d 944, 946 (Fla. 1979).
In the instant case, the hearing officer's findings included the following:
The EIS is insufficient because it does not adequately discuss the costs (implementation and ongoing costs to affected persons or the impact of the Proposed Rules on small business);
The weight of the evidence proved that the Proposed Rules will have an economic impact on affected persons;
The weight of the evidence failed to prove that the Board did not fully consider the asserted economic factors and impact of the implementation cost affected persons can be expected to incur as a result of the Proposed Rules.
As to that portion of the EIS dealing with small businesses, the hearing officer found:
The EIS contains a statement that the Proposed Rules should have no economic impact on small business. In reaching this conclusion the Board failed to take into account the legal definition of `small business' contained in Florida Statutes;
The Board did, however, actually consider the impact the Proposed Rules would likely have on small ambulatory surgery centers subject to the Proposed Rules;
The Board attempted to reduce the economic impact on small ambulatory surgery centers by allowing affected persons to file data on computer tape or on diskette. By allowing the use of diskettes for reporting data, the Board made it possible for affected persons to use personal computers to comply with the Proposed Rules. Delayed submission of some data elements was also allowed in order to reduce the impact on small facilities;
It is unlikely that the Board would have made further modifications of the Proposed Rules had the legal definition of `small business' been considered. The weight of the evidence failed to prove what, if any, reasonable modifications should have been taken by the Board to accommodate any economic impact on small business;
The weight of the evidence failed to prove whether any of the entities that participated in the proceeding were small businesses. Those entities, although meeting the definition of small business with regard to the number of employees they have and their net worth, failed to prove whether they are "independently owned and operated." See Section 288.703(1), Florida Statutes (1989). The weight of the evidence failed to prove if *1364 any person affected by the Proposed Rules is a small business;
The weight of the evidence failed to prove that the Board did not fully consider the asserted economic factors and impact of small business which can be expected to incur as a result of the Proposed Rules. Therefore, the treatment of the impact on small business in the EIS was harmless error. The weight of the evidence also failed to prove that the Proposed Rules constitute an invalid exercise of delegated legislative authority because of the impact on small business.
Preparation of an economic impact statement is a procedural requirement, and any defect in its preparation will not defeat an otherwise valid rule as long as evidence proves that an agency fully considered the economic impact of its action or if it is established that the agency's proposed action will have no economic impact. See Division of Workers' Compensation v. McKee, 413 So.2d 805 (Fla. 1st DCA 1982); Polk School Bd. of Polk County, 373 So.2d 960 (Fla. 2nd DCA 1979). The harmless error doctrine will be applied unless the challenging party can show that deficiencies in the economic impact statement impair the fairness of the rulemaking proceedings. Humana, Inc. v. Department of Health and Rehabilitative Servs., 469 So.2d 889 (Fla. 1st DCA 1985). Here, the hearing officer determined, in effect, that any defects in the determination of economic impact in the instant case constituted harmless error.
We do not believe, however, that the application of the harmless error doctrine was intended to totally relieve an agency of its obligation to make reasonable attempts to follow mandated statutory procedures. Where, as here, the agency has apparently ignored its statutory duty, it is impossible for the hearing officer or this court to determine that there is no economic impact or that the agency fully considered the statutorily mandated factors. Cf. Division of Workers' Compensation v. McKee, supra (factors to be considered in application of harmless error doctrine).
In the instant case, the record is devoid of any evidence that the HCCCB made any attempt to evaluate ongoing costs. The hearing officer acknowledges and the evidence supports the finding that the ongoing costs of complying with the proposed rules will have an economic impact on "affected persons." We cannot find that the board fully considered the economic impact of substantial ongoing costs, especially where these costs were reasonably ascertainable and the board took no action to discover that information. Furthermore, had the board been fully aware of these costs, that knowledge may have had an impact on the board's decision as to what data to require and what method to utilize in collecting that data.
We are also concerned with the board's failure to follow the procedures relating to small and minority businesses. The Legislature has specifically expressed its special interest in the effect of proposed agency rules on these types of businesses. If an agency determines that there will be an impact on small business, the agency is required to send "written notice of such rule to the Small and Minority Business Advocate, the Minority Business Enterprise Assistance Office, and the Division of Economic Development of the Department of Commerce not less than 21 days prior to the intended action." § 120.54(3)(b), F.S. (1989). The statute further provides for comments from these offices and requires the adopting agency to adopt or respond to comments. Circumvention of this procedure may result in a rule being declared to be invalid.
In the instant case, the hearing officer found that none of the parties challenging the proposed rules demonstrated that they were a small or minority business. He also stated that it had not been proven that the board did not fully consider the asserted economic impact on small business. We feel that this factor is not dispositive. Section 120.54(3)(b) specifically provides that certain parties are to receive notice and are to be allowed to provide input prior to agency adoption of rules. Failure to provide notice may have precluded these parties from providing input essential to protecting *1365 small businesses. It cannot be assumed that the board would have rejected input from these representatives of small business. In light of our other rulings, however, it is unnecessary for us to rule on this issue or the standing of the appellants in regard to the small and minority business issue.
The decision of the hearing officer is, therefore, reversed and the proposed rule is declared to be invalid.
BOOTH and ZEHMER, JJ., concur.
NOTES
[1] For instance, appellant challenged the wisdom of requiring specific versus aggregate data. If HCCCB had statutory authority to require data submission by the appellants, the level and method of data collection may well be within the lawful discretion of the agency. Since we determine there is no lawful authority to require submission, we need not reach the issue.
[2] In Florida League of Cities, rules proposed by the Department of Insurance to regulate municipal retirement and pension plans were challenged on the ground of an invalid exercise of legislatively delegated authority. The result in the Florida League of Cities' case has recently been discussed in Burris, Survey of Florida Law: Administrative Law, 14 Nova L.Rev. 583, 594 (1990), and was reported to be "consistent with the distinction between implied powers argument used to expand agency jurisdiction beyond that delegated to it by the Legislature as compared to when it is merely used to provide additional powers for implementing agency policy in an area clearly within its delegated area of authority."
[3] The rest of this section deals with hospitals and care provided by hospitals.