630 So.2d 1189 (1994)
INJURED WORKERS ASSOCIATION OF FLORIDA, Florida AFL-CIO, and the Florida Workers Advocates, Petitioners/Appellants,
v.
DEPARTMENT OF LABOR AND EMPLOYMENT SECURITY, FLORIDA Chamber of Commerce Workers' Compensation Self Insurance Fund, Risk and Insurance Services Corp., Florida Construction Commerce & Industry Self Insurers Fund, Florida Employers Insurance Service Corp., and Executive Risk Consultants, Inc., Respondents, Intervenors/Appellees.
No. 93-1210.
District Court of Appeal of Florida, First District.
January 18, 1994.
Rehearing Denied February 9, 1994.
*1190 Stephen Marc Slepin, Tallahassee, for appellants.
Edward A. Dion, Asst. General Counsel and Julie E. Douthit, Sr. Atty., Thomas J. Maida and Patricia H. Malono of McConnaughhay, Roland, Maida, Cherr & McCranie, P.A., and David R. Terry of Newell & Stahl, P.A., Tallahassee, for appellees.
PER CURIAM.
The Injured Workers Association challenges the validity of rule 38F-3.017, Florida Administrative Code (June 21, 1993). A hearing officer of the Division of Administrative Hearings found the rule valid. We affirm.
The Injured Workers Association of Florida and others[1] (employees) raise four points in their rule challenge; the Department of Labor and Employment Security and others[2] (employers) defend the rule. These are the facts. The 1990 Legislature amended the Workers' Compensation Law to provide that a three-member panel, in cooperation with the division of workers' compensation: "shall establish and use a uniform disability rating guide[3] by January 1, 1991." Ch. 90-201, § 20, at 936, Laws of Fla.; § 440.15(3)(a)3, Fla. Stat. (Supp. 1990). An advisory *1191 committee made recommendations to the three-member panel regarding the guide; the panel at last adopted the guide on April 8, 1992. The agency[4] thereafter proposed to amend rule 38F-3.017 to include the following sentence:
For injuries occurring on or after November 1, 1992, The Florida Workers' Compensation Impairment Rating Guide, which is adopted by reference as part of this rule, shall be used.
The legislature mandated that the guide be based "on medically or scientifically demonstrable findings," and that the guide "be more comprehensive than the AMA Guides."[5] Employees argue that the rule is an invalid exercise of legislative authority because the guide eliminates loss of range of spinal motion from the list of impairments, and thus it is not based on medically or scientifically demonstrable findings and is not more comprehensive than the American Medical Association Guides. The evidence however includes the opinions of orthopedic surgeons that loss of range of spinal motion is not a permanent impairment  range of motion diminishes naturally with age; range of motion varies from individual to individual and its measurement is subject to deliberate alteration; and range-of-motion impairment is not permanent  range of motion may increase with physical therapy. The absence of loss of spinal range of motion does not make the guide less comprehensive than the AMA Guides per se; rather it reflects the panel's conclusion that such is not a permanent impairment. We note that loss of range of spinal motion is not included in the Minnesota Schedule, a schedule formerly authorized for use in Florida.[6]
Employees also argue that the rule is invalid because the guide rates mental impairments differently than they formerly were rated  mental impairments used to be rated on a numerical scale. The evidence however included the opinion that mental impairments cannot be reduced to meaningful numbers, a fact reflected in the elimination of numerical scales for mental impairments in the third edition of the AMA Guides. Employees thus failed to show that the guide (rule) is ill-founded. The hearing officer's determination that the rule is a valid exercise of legislative authority must be sustained because it is supported by competent, substantial evidence.
Employees also challenge the facial constitutionality of the rule. Rules are entitled to a presumption of constitutional validity and should be interpreted, if possible, in a manner that preserves their validity. See Colding v. Herzog, 467 So.2d 980, 983 (Fla. 1985) (non appealing taxpayers not entitled to refund; tax was assessed on basis of "presumptively valid rule"); Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883, 888 (Fla. 1959) ("As often pointed out, rules of the [agency] are cloaked in a presumption of statutory validity which places on the petitioners the burden of proving their invalidity."); cf. Trindade v. Abbey Road Beef 'N Booze, 443 So.2d 1007, 1011 (Fla. 1st DCA 1983) (court has obligation to apply an interpretation *1192 of section 440.15(3)(a)3, Florida Statutes, upholding its constitutionality, if permissible). The instant guide[7] can be interpreted constitutionally. All permanent impairments can be rated by direct reference to the guide, by reference to an analogous condition in the guide, or by reference to an outside source, if necessary; an impairment not listed thus is not excluded. If the guide is silent on an impairment, then other sources can be consulted to rate the impairment. Trindade, 443 So.2d at 1011-12.
Employees yet argue that because the guide purports to be exclusive[8] and because the AMA Guides recognize loss of range of spinal motion as a permanent impairment but the instant guide does not, therefore the courts are closed to this impairment, in violation of the Florida and federal constitutions. Employees particularly argue a denial of access to courts, guaranteed by section 21 of the Florida Constitution,[9] a denial of due process, guaranteed by section 9 of the Florida Constitution,[10] and a denial of equal protection, guaranteed by section 2 of the Florida Constitution.[11] We disagree, because the instant rule presents no facial unconstitutionality. Whether the rule is unconstitutional as applied must await an appropriate case. Employees thus failed to overcome the rule's presumption of facial constitutionality.[12]
Employees argue that the agency's failure to enact the rule within 180 days of section 440.15(3)(a)3's effective date renders the rule invalid. We disagree. Chapter 120 deadlines are subject to a harmless error analysis. Cf. Department of Business Reg. v. Hyman, 417 So.2d 671, 673 (Fla. 1982) (holding that failure to render final order within 90-day statutory deadline does not cause the order to be unenforceable; action is unenforceable only if lateness impairs the fairness of the proceedings or the correctness of the action); Cross Key Waterways v. Askew, 351 So.2d 1062, 1070 (Fla. 1st DCA 1977) (holding that failure to file rule within statutory deadline does not render the rule unconstitutional), aff'd, 372 So.2d 913 (Fla. 1978). Employees have not alleged that the delay resulted in any unfairness in the rule-making proceeding or in any incorrect action. Employees produced no evidence that any information or data provided by any interested person was not considered by the agency. Employees argued that several of the impairment ratings in the guide are too low; this reflects a substantive disagreement between the parties  not a procedural deficiency. There is no evidence that the impairment ratings in the guide would be higher had the 180-day deadline been met. Employees failed to allege any harm resulting from the delay in adopting the rule; the hearing officer thus correctly determined that no invalidity results from the delay.
Employees finally argue that the agency's economic impact statement failed to meet the requirements of section 120.54(2)(b), Florida Statutes (1991).[13] The economic *1193 impact statement addresses each of the five factors identified in section 120.54(2)(b), even though the statement may not be as complete as employees might wish. "A rule will not be declared invalid merely because the economic impact statement may not be as complete as possible." Health Care & Retirement Corp. v. Department of Health & Rehab. Servs., 463 So.2d 1175, 1178 (Fla. 1st DCA 1984). This court has noted:
Substantial compliance, not perfection, is all that is required of the EIS. The statement is sufficient if it addresses all areas required by section 120.54(2)(b), even though the estimates may be subject to debate. It is moreover not necessary for an agency to speculate on estimates for matters it cannot predict.
Florida League of Cities, Inc. v. Department of Envtl. Reg., 603 So.2d 1363, 1371 (Fla. 1st DCA 1992). Deficiencies in the economic impact statement will not result in rule invalidity unless the challenger shows that a deficiency impaired the fairness of the rule-making proceedings. Cataract Surgery Center v. Health Care Cost Containment Bd., 581 So.2d 1359, 1364 (Fla. 1st DCA 1991). We have observed:
Preparation of an economic impact statement is a procedural requirement, and any defect in its preparation will not defeat an otherwise valid rule as long as evidence proves that an agency fully considered the economic impact of its action... . The harmless error doctrine will be applied unless the challenging party can show that deficiencies in the economic impact statement impair the fairness of the rule-making proceedings.
Id. at 1364 (citations omitted). Employees failed to show harm resulting from noncompilation of data or other alleged deficiencies in the economic impact statement.
The hearing officer therefore correctly determined that the rule is valid. We affirm the hearing officer in all respects. It is so ordered.
MINER, WEBSTER and LAWRENCE, JJ., concur.
NOTES
[1] The Florida AFL-CIO and the Florida Workers Advocates.
[2] The Florida Chamber of Commerce Workers' Compensation Self-Insurance Fund, Risk and Insurance Services Corporation, Florida Construction Commerce & Industry Self-Insurers Fund, Florida Employers Insurance Service Corporation, and Executive Risk Consultants Incorporated.
[3] Doctors use the guide to rate workers' permanent impairments; a rating is necessary to receive workers' compensation benefits.
[4] The Florida Department of Labor and Employment Security.
[5] The legislation provides in relevant part:

This guide shall be based on medically or scientifically demonstrable findings as well as the systems and criteria set forth in the American Medical Association's Guides to the Evaluation of Permanent Impairment; the Snellen Charts, published by American Medical Association Committee for Eye Injuries; and the Minnesota Department of Labor and Industry Disability Schedules. The guide shall be more comprehensive than the AMA Guides to the Evaluation of Permanent Impairment and shall expand the areas already addressed and address additional areas not currently contained in the guides. On August 1, 1979, and pending the adoption, by rule, of a permanent schedule, Guides to the Evaluation of Permanent Impairment, copyright 1977, 1971, 1988, by the American Medical Association, shall be the temporary schedule and shall be used for the purposes hereof. For injuries after July 1, 1990, pending the adoption by division rule of a uniform disability rating guide, the Minnesota Department of Labor and Industry Disability Schedule shall be temporarily used unless that schedule does not address an injury. In such case, the Guides to the Evaluation of Permanent Impairment by the American Medical Association shall be used.
Ch. 90-201, § 20, at 936-37, Laws of Fla.; § 440.15(3)(a)3, Fla. Stat. (Supp. 1990) (emphasis added).
[6] See supra note 5.
[7] We use guide and rule here interchangeably.
[8] The guide provides:

If a permanent impairment is covered by this Guide, no assignment or rating of that permanent impairment at variance with this Guide is permissible. If a category applicable to the impairing condition cannot be found in this rule, then the category most closely resembling the impairment or the degree of impairment based on analogy should be chosen.
[9] "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay."
[10] "No person shall be deprived of life, liberty or property without due process of law... ."
[11] "All natural persons are equal before the law... . No person shall be deprived of any right because of race, religion or physical handicap."
[12] We also note the Supreme Court's recent holding that a statute that changes the degree of negligence necessary to maintain a tort action does not abolish the right of redress for an injury. Eller v. Shova, 630 So.2d 537 (Fla. 1993).
[13] Section 120.54, Florida Statutes (1991) (rule-making; adoption procedures), in relevant part, provides:

(2)(b) Each agency shall provide information on its proposed action by preparing a detailed economic impact statement. The economic impact statement shall include:
1. An estimate of the cost to the agency of the implementation of the proposed action, including the estimated amount of paperwork;
2. An estimate of the cost or the economic benefit to all persons directly affected by the proposed action;
3. An estimate of the impact of the proposed action on competition and the open market for employment, if applicable;
4. A detailed statement of the data and method used in making each of the above estimates; and
5. An analysis of the impact on small business as defined in the Florida Small and Minority Business Assistance Act of 1985.