PER CURIAM.
The employer and carrier appeal, and the claimant cross-appeals, a compensation order *100 awarding wage loss benefits. We reverse and remand for further consideration.
The claimant had surgery on his wrist in December of 1989, performed by Dr. Werntz. This initial surgery was not related to the claimant’s employment. In July of 1990, the claimant suffered an industrial accident when a drum fell and hit the wrist, fracturing the four corner fusion performed in 1989. Dr. Werntz performed a second surgery in August of 1990 in which she basically redid the initial surgery. A third surgical procedure was performed by Dr. Werntz in November of 1990 because of regrowth of a bone, a complication arising from the initial surgery which was unrelated to the industrial accident.
Claimant received compensation benefits for 52 weeks. The claimant subsequently filed a claim seeking resumption of temporary partial disability, or in the alternative, temporary total disability, permanent total disability, or wage loss benefits.
The judge of compensation claims (JCC) found that 10% of the claimant’s permanent impairment was attributable to the industrial injury and awarded wage loss benefits. There is no competent, substantial evidence in the record to support this finding. Dr. Werntz opined that the claimant had a 15% permanent impairment to the body as a whole, but stated that the percentage of permanent impairment did not increase as a result of the industrial injury. She explained that the industrial injury resulted in the claimant requiring réoperation which resulted in the same impairment that he would have had from the initial surgery alone. Dr. Borrero, who saw the claimant once for the purpose of performing an independent medical examination subsequent to the claimant undergoing all three surgical procedures, agreed with Dr. Werntz that the claimant had a 15% permanent impairment. Dr. Borrero was of the opinion that some of the impairment was attributable to the initial injury and some to the industrial accident but he was unable to apportion impairment between the two incidents.
Additionally, the JCC’s reason for rejecting the testimony of Dr. Werntz is not a legally sound reason. The JCC rejected Dr. Werntz’ testimony that none of the permanency was attributable to the second surgery after the industrial accident because it “is axiomatic to say that the second surgery obviously had some effect on the claimant’s permanency.” Although the JCC relied on the testimony of Dr. Borrero, Dr. Borrero made no attempt to explain why some of the 15% permanent impairment must be attributable to the industrial injury and agreed that Dr. Werntz, who performed all three surgical procedures, would be in a more favorable position to apportion any impairment. Although the JCC also relied on the claimant’s testimony that he had less mobility in the wrist after the second surgery than after the first, the JCC did not discuss the effect of the third surgery which was necessary because of the regrowth of a bone which caused some loss of motion. See H & A Frank’s Constr. v. Mendoza, 582 So.2d 780 (Fla. 1st DCA 1991); South v. Heartland Employment & Training Admin., 527 So.2d 270 (Fla. 1st DCA 1988) (Although a JCC generally does not need to explain when he accepts the testimony of- one doctor and rejects the testimony of another, he must state his reasons when: (1) the reason for the finding in the order is not apparent from the record; or (2) it appears that the JCC has overlooked or ignored evidence in the record.).
REVERSED and REMANDED for further proceedings.
ERVIN, BARFIELD, and WOLF, JJ., concur.