Ms. Phyllis O. Douglas Dade County Public Schools Attorney 1450 Northeast Second Avenue Miami, Florida 33132
Dear Ms. Douglas:
On behalf of the School Board of Dade County, you ask substantially the following questions:
1. May the school board amend its rules to expand special school security officers' powers of arrest for violations of law that do not occur on school property but which are perpetrated by students or are related to the immediate protection and safety of students, personnel, and school property?
2. May the special school security officers participate in mutual aid agreements, thereby making arrests and performing other police duties off school premises and unrelated to school activities?
In sum:
1. Absent statutory authority, the School Board of Dade County may not expand the arrest powers of its special security officers for violations of law that do not occur on school property. The special security officers, however, may be appointed by the sheriff as deputies if they do not receive remuneration for serving in such capacity and they may exercise their common law right to make an arrest outside their jurisdiction under certain circumstances.
2. The School Board of Dade County is not a law enforcement agency that may enter into mutual aid agreements whereby the board's special security officers may make arrests and perform other duties off school premises and unrelated to school activities.
Question One
The Dade County School Board was authorized by Chapter 70-519, Laws of Florida, to commission one or more special officers for the protection and safety of school personnel, property and students within the school district. The act sets forth the powers to be exercised by the special officers as follows:
The special officer shall have and exercise, throughout the county in which he is employed, the power to make arrests for violations of law on the property of the district school board, and to arrest persons whether on or off such property who violate any law on such property under the same conditions which deputy sheriffs may, by law, make arrests, and shall have authority to carry weapons while in the performance of his official duties.
Thus, the special officers appointed pursuant to the act have been given arrest powers only for violations of law on district school board property. While the officers may exercise such arrest powers throughout the county in which they are employed, they are limited to arresting persons who have committed the violations of law on school board property.
The special act authorizing the appointment of the special officers was repealed by Chapter 71-29, Laws of Florida. Section 3(4), Chapter 71-29, Laws of Florida, however, provided that the repealed chapters "affecting a particular school district or school districts shall become a valid regulation of that school district, subject to modification or repeal as are other regulations." You have provided a copy of the rules adopted by the school board that set forth the arrest powers of the special officers as reflected in the repealed special act.
Generally, a law enforcement officer's powers are limited to the jurisdictional boundaries of the law enforcement agency employing the officer, unless legislatively authorized otherwise.[1] In this instance, the arrest powers of the special officers for public schools was legislatively limited to be exercised for violations of law on school property. While the arrest powers of the special officers are reflected in the school board's rules, the school board has no inherent authority to expand such powers beyond that which has been legislatively authorized.[2]
You have not directed my attention to any statutory or constitutional grant of authority to school boards that would enable them to expand the specific arrest powers of their special officers. School boards have been given "home rule" power to "exercise any power except as expressly prohibited by the State Constitution or general law."[3] This office, however, has concluded that such power must be exercised for school purposes.[4]
You have stated that the school board wishes to expand the school security officers' arrest powers to criminal violations on other than school property in order to ensure the safety of students, personnel and property of the school. Generally, law enforcement on non-school property is carried out by municipal police depart-ments and the county sheriff. I am unaware of any statutory or case law that supports the school board's assumption of law enforcement powers coextensive with that of the sheriff.
Under certain circumstances, however, the sheriff may appoint other law enforcement officers, such as school security officers, to be deputies. Generally a law enforcement officer in one jurisdiction may not accept employment or appointment as an officer in another jurisdiction without violating the dual officeholding prohibition in section 5(a), Article II, State Constitution. The courts, however, have recognized a limited exception to this prohibition when the officer receives no remuneration for the additional duties.[5] Further, the special security officers continue to have their common law right as citizens to make arrests outside their jurisdictional territory.[6]
Accordingly, in the absence of legislative or constitutional provisions granting general law enforcement powers to the school district, it is my opinion that a school board may not grant arrest powers to its special officers for violations of law that do not occur on school district property. The school security officers may be appointed by the sheriff to serve as deputies, if such officers receive no remuneration for such service. They may also exercise their common law right as citizens to make arrests outside their jurisdiction.
Question Two
The "Florida Mutual Aid Act"[7] (act) provides the authority for "a law enforcement agency to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or with any law enforcement agency of the United States or its territories."[8] The term "law enforcement agency" is not defined for purposes of the act. Definitions of this term in related statutes concerning the activities of law enforcement agencies may therefore be reviewed and read with the act to determine its meaning.[9] Section 934.02(10), Florida Statutes, defines "Law enforcement agency" as
an agency of the State of Florida or a political subdivision thereof or of the United States if the primary responsibility of the agency is the prevention and detection of crime or the enforcement of the penal, traffic, or highway laws of this state and if its agents and officers are empowered by law to conduct criminal investigations and to make arrests. (e.s.)
Thus, it would appear that an agency must have, as its primary responsibility, the prevention and detection of crime before it is considered a law enforcement agency. You have not stated, nor does it appear, that the school board's primary responsibility is to prevent and detect crime.
This office has acknowledged,[10] and it has been judicially determined,[11] that school security officers are "law enforcement officers." Such a designation of the officers, however, does not appear to mandate finding that the school board is a law enforcement agency. In Attorney General Opinion 91-39 (1991), this office considered whether a school board's security department was a law enforcement agency entitled to share in forfeited funds or property pursuant to the "Florida Contraband Forfeiture Act" (forfeiture act), ss. 932.701-932.704, Florida Statutes. While acknowledging that security officers are law enforcement officers, this office found that the terms of the forfeiture act, prescribing the manner in which forfeited funds are to be distributed, speak only to counties, municipalities and state agencies with law enforcement powers. It was concluded, absent a statutory provision allowing others than the enumerated agencies to share in the forfeited funds, that the school board's security department was not a law enforcement agency for purposes of the contraband forfeiture act.
Section 23.1225, Florida Statutes, describes the types of agreements that are considered mutual aid agreements. The act refers to voluntary cooperation agreements between two or more law enforcement agencies to allow cooperation and assistance of a routine law enforcement nature across jurisdictional lines, an example of which would be the providing of a joint city-county task force on narcotics smuggling.[12] Another type of agreement contemplated by the act is one that provides for operational assistance in a law enforcement emergency.[13] The act, however, provides that "[a] mutual aid agreement may be entered into by a sheriff or by the mayor or chief executive officer of a municipality or county on behalf of a law enforcement agency, if authorized by the governing body of the municipality or county."[14] There are no analogous provisions in the act authorizing a school board to enter into a mutual aid agreement pursuant to the act.
Accordingly, it is my opinion that a school board is not a law enforcement agency for purposes of entering into a mutual aid agreement under Part I, Chapter 23, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, Op. Att'y Gen. Fla. 90-86 (1990) (municipal police officer has no official authority to arrest an individual outside the corporate boundaries of the municipality except in fresh pursuit) [Section 901.252, Fla. Stat. (1993), created by s. 1, Ch. 91-174, Laws of Florida, authorizes a municipal police officer to patrol municipally owned property outside the city's geographical limits and to detain a person the officer has probable cause to believe has violated a state law or a county ordinance on such property, but requires such officer immediately to call a law enforcement officer with jurisdiction over the property.]. See also, ss. 23.12-23.127, Fla. Stat. (1993), the "Florida Mutual Aid Act," allowing a law enforcement agency of this state to enter into a mutual aid agreement with another law enforcement agency of this state or any other state or of the United States or its territories, to, among other things, render assistance of a routine law enforcement nature across jurisdictional lines.
[2] See, Cataract Surgery Center v. Health Care Cost Containment Board, 581 So.2d 1359 (Fla. 1st DCA 1991) (agency may not extend or enlarge its jurisdiction beyond that which is granted statutorily).
[3] Section 230.03(2), Fla. Stat. (1993).
[4] See, Op. Att'y Gen. Fla. 83-72 (1983) (district school board may exercise any power for school purposes except as expressly prohibited by the State Constitution or general law; however, in the case of a direct conflict between a state statute and a rule, policy or other form of legislative action taken by a district school board, the state statute would prevail).
[5] See, Rumple v. State, 422 So.2d 867 (Fla. 2nd DCA, 1982) (municipal police officer may also serve as a deputy sheriff without violating s. 5(a), Art. II, State Const., when there is no remuneration for service as a deputy sheriff). See also, Op. Att'y Gen. Fla. 90-15 (part-time police officer may not serve as full-time police officer in another municipality when he receives remuneration for both positions).
[6] See, State v. Phoenix, 428 So.2d 262, 265 (Fla. 4th DCA, 1982) (police officers have common law right as citizens to make citizen's arrest; private persons can arrest for a felony committed in their presence and for a felony that they knew was committed if they have probable cause to believe and do believe that the person arrested perpetrated the felony).
[7] Part I, C. 23, Fla. Stat. (1993).
[8] Section 23.121(1)(g), Fla. Stat. (1993).
[9] See, Krause v. Reno, 366 So.2d 1244, 1252 (Fla. 3rd DCA 1979) (lack of definition for "agency" in Sunshine Law, s. 286.011, Fla. Stat., allows court to look to similar or analogous statutory provisions which give effect to the same public policy underlying the Sunshine Law).
[10] See, Op. Att'y Gen. Fla. 91-39 (1991).
[11] See, E.P. v. State, 462 So.2d 559 (Fla. 3d DCA 1985) (school security officer is law enforcement officer within meaning of statute allowing adjudication of delinquency for offense of battery on a law enforcement officer.)
[12] Section 23.1225(1)(a), Fla. Stat. (1993).
[13] Section 23.1225(1)(b), Fla. Stat. (1993).
[14] Section 23.1225(3), Fla. Stat. (1993).