KAHN, Judge.
In this workers’ compensation appeal we hold that the impairment rating assigned by the judge of compensation claims (JCC) is supported by competent substantial evidence. Accordingly, we affirm the JCC’s denial of the wage loss claim.
Claimant Raymond Murphy has a significant medical history. On November 27, 1989, he sustained a work-related injury to his low back while doing drywall punch-out work for another employer. As a result of that injury, Dr. Thomas Delgado, a neurosurgeon, performed a laminectomy at the L5-S1 level on January 18, 1990. Dr. Delgado placed claimant at maximum medical improvement (MMI) on May 17, 1990, with a 5 percent PI rating. Restrictions placed on claimant’s activities included no lifting over 35 pounds and no repeated bending or stooping. Palliative treatment was rendered by Dr. James Patterson, a physiatrist, who agreed that claimant was at MMI and could do no lifting greater than 20 pounds, no frequent bending and should alternate sitting to standing. On December 31, 1990, claimant was involved in a motor vehicle accident injuring his neck and aggravating his low back injury. An MRI done on May 17,1991, showed a recurrent herniated disc at the L5-S1 level. Claimant continued to receive chiropractic care for the motor vehicle accident through August 1991.
Although he had physical restrictions on his activities as a result of the first surgery performed by Dr. Delgado, claimant was able to return to work in the drywall business, doing finishing and punch-out repair work for at least a year and a half before the current industrial accident. He testified that he was able to perform this occupation as the duties were within his physician imposed physical restrictions.
On June 28, 1993, claimant suffered the present industrial injury, also to his low back, when he missed the last step coming off a ladder. Initial medical treatment was rendered by Dr. Patterson who had treated claimant following his first industrial accident. While off work for the industrial acci *919 dent, claimant was involved in another motor vehicle accident on August 12,1993, resulting in injuries to his neck and upper back. Another MRI performed on October 21, 1993, showed a recurrent herniated disc at the L5-S1 level. On March 2, 1994, claimant underwent a laminectomy and diskectomy followed by a spinal fusion performed by Dr. Thomas Delgado, a neurosurgeon, and Dr. Gilberto Vega, an orthopedic physician.
Dr. Delgado testified that during the time he continued to treat claimant, he deferred to Dr. Vega’s opinion as to MMI and permanent partial impairment. Nevertheless, Dr. Delgado wrote a report to the carrier on January 3, 1995, in which the doctor stated that claimant would qualify for a 3 percent rating based upon the Florida guidelines due to the March 1994 surgery.[1] In his deposition, Dr. Delgado testified that under the Florida Guides to Permanent Impairment, claimant had a 9 percent impairment rating after his January 18, 1990, surgery. Delgado also stated that an additional 2 percent would be attributable to the second surgery under the Florida Guides.
Dr. Vega disagreed with the Florida Guides as to the impairment rating attributable to the second surgery. At one point Dr. Vega testified that a rating of 9 percent would be proper under the Florida Guides for the second surgery. He explained that, in addressing a hemilaminectomy and fusion, the procedure endured by claimant in this case, the Florida Guides allow a 9 percent rating. He further noted that for a second identical procedure, the Guides would assign an additional 2 percent. Dr. Vega disagreed with the Guides at this point and stated, “the second surgery — the second surgery has to be taken by itself, and that would be 9 percent because that includes a fusion.”
The JCC reviewed the medical testimony, as well as the Florida Guides and found that the evidence before her showed that 2 percentage points of impairment would be assigned for the second surgery undergone by claimant. In arriving at this 2 percent impairment rating, the JCC noted she relied “on my own reading of the Florida Guides.”
The only issue before the court on the rating is whether competent substantial evidence supports the JCC’s finding. The argument made at length in the dissenting opinion that the impairment rating in this case should have been based upon an aggravation theory has never been made by appellant. Rather, appellant argues quite clearly that the only evidence that could have been properly accepted by the JCC was the testimony of Dr. Vega, and Vega’s testimony can only be read to show that claimant has an impairment of between 9 and 11 percent to the body as a whole based on the injuries he sustained in the present compensable accident. To directly take the words from claimant’s reply brief:
The surgical procedure that claimant was required to undergo as a result of his industrial accident, by itself, imposes an 11 percent PPI based upon the Florida Guides, per the testimony of Dr. Vega-
The question of a combined rating based upon aggravation is not before this court.
The order is supported by competent substantial evidence. Dr. Delgado testified that under the Florida Guides a 2 percent rating was proper for the 1994 surgery. On cross examination, Dr. Vega admitted that the Florida Guides state “the second operation is at 2 percent,” but emphatically stated his disagreement with these Guides.
Section 440.02(19), Florida Statutes (1991), defines “permanent impairment” as “any anatomic or functional abnormality or loss, existing after the date of maximum medical improvement, which results from the injury.” Section 440.15(3)(a)3., Florida Statutes (1993), required the Division of Workers’ Compensation to establish and use a uniform disability rating guide for the purposes of assigning permanent impairment. For injuries occurring on or after November 1, 1992, impairment ratings must be based upon the new Florida Guides. Injured Workers’ Ass’n of Fla. v. Department of Labor & Employ. Sec., 630 So.2d 1189 (Fla. 1st DCA 1994). The evidence in the present *920 ease shows that claimant had a 9 percent permanent partial impairment rating under the Florida Guide before the present industrial accident. Only the permanent impairment resulting from the compensable injury serves as a basis for wage loss eligibility. See Regal Marine Indus, v. Dunkel, 642 So.2d 99 (Fla. 1st DCA 1994) (reversing award of wage loss where surgeon testified that although claimant had a 15 percent permanent impairment to the body as a whole, this impairment did not increase as a result of the industrial injury, and was the same as it had been after an earlier non-compensable surgery.) The medical evidence in this case provides competent substantial evidence for the JCC’s assignment of a 2 percent rating for this industrial injury.
DAVIS, J., concurs.
ERVIN, J., concurs and dissents.

. Although the report of Dr. Delgado refers to a 3 percent rating, the dispute in this case is whether the rating should be 2 percent on the one hand, or 9 percent to 11 percent on the other hand.