Ms. Linda L. McKinley Assistant Polk County Attorney Post Office Box 9005, Drawer AT01 Bartow, Florida 33831-9005
Ms. Julia C. Mandell Assistant Hillsborough County Attorney Post Office Box 1110 Tampa, Florida 33601
Dear Ms. McKinley and Ms. Mandell:
You ask substantially the following questions:
1. Do the zoning regulations of the Polk County Joint Airport Zoning Board apply to the construction of structures outside its jurisdiction but within Hillsborough County, which is a local government member of the board?
2. Can an "airport hazard" as defined in section 333.01(3), Florida Statutes, include a structure located outside the airport height zones established in the Polk County Joint Airport Zoning Board's regulations?
In sum:
1. Zoning regulations of the Polk County Joint Airport Zoning Board do not apply to structures outside its jurisdiction even though the structure is located within Hillsborough County, which is a local government member of the joint zoning board.
2. An "airport hazard" must, by its definition, be located within the airport hazard area controlled by a joint airport zoning board.
As your questions are interrelated, they will be answered together.
You state that the Polk County Joint Airport Zoning Board (JAZB) is an intergovernmental body that has adopted land development regulations to ensure aviation-compatible land uses within the airport areas of the cities of Auburndale, Bartow, Lake Alfred, Lakeland, Lake Wales and Winter Haven, and the counties of Polk and Hillsborough. Zoning regulations were adopted pursuant to Chapter 333, Florida Statutes. Further, as statutorily required, an airport zoning board of adjustment was appointed to hear any variance requests and appeals from JAZB regulations.
In 1994, a communications company requested a variance to construct a communications tower reaching 1,105 feet above ground level, a height in excess of the 500 feet above ground level limitation on structures within the territorial jurisdiction of JAZB. You cite specifically to section III(A)(3) of JAZB regulations, which limits the height of objects as follows:
"Outside the boundaries of the Airport Height Zones established in this section, but inside the territorial limits over which the local governments represented on the JAZB have jurisdiction, no object of natural growth or structure shall be permitted if its height would: a. Exceed five hundred (500) feet above ground level at its site[.]"
The proposed location of the tower was originally in Polk County, within three-quarters of a mile of the Hillsborough/Polk county line. After the board of adjustment denied the company's request for a variance in Polk County, the applicant sought and gained approval from Hillsborough County to construct the tower within that county's jurisdiction.
Section 333.03, Florida Statutes, requires every political subdivision having an airport hazard area within its territorial limits to adopt, administer, and enforce airport zoning regulations for such area.[1] When an airport is owned or controlled by a political subdivision and the hazard area is wholly or partly outside the political subdivision's territorial limits, the owner/controller political subdivision and the political subdivision within which the hazard area is located have two options for establishing airport zoning applicable to the area.[2] The subdivisions must either enter into an interlocal agreement to establish airport zoning regulations for the area or create a joint airport zoning board.[3] If a joint airport zoning board is created, it "shall have the same power to adopt, administer, and enforce airport zoning regulations applicable tothe airport hazard area in question as that vested in paragraph (a) in the political subdivision within which such area is located."[4] (e.s.)
Clearly, imposing airport zoning regulations is relevant only to the "airport hazard area" affecting the airport or airports operated or controlled by a political subdivision. An "airport hazard area" is defined as "any area of land or water upon which an airport hazard might be established if not prevented as provided in [Chapter 333, Florida Statutes]."[5] This definition, however, provides little guidance in defining a particular boundary. An "airport hazard" means:
"any structure or tree or use of land which would exceed the federal obstruction standards as contained in 14 C.F.R. ss. 77.21, 77.23, 77.25, 77.28, and 77.29 and which obstructs the airspacerequired for the flight of aircraft in taking off, maneuvering, orlanding or is otherwise hazardous to such taking off, maneuvering, or landing of aircraft and for which no person has previously obtained a permit or variance pursuant to s. 333.025 or s.333.07."[6] (e.s.)
There appears to be no disagreement that a 1,105 feet high communications tower exceeds the 500 feet above ground level limitation on structures within the territorial jurisdiction of JAZB contained in JAZB and applicable federal regulations. By its plain language, however, the definition of an "airport hazard" in section 333.01(3), Florida Statutes, makes obstruction of the airspace required for the flight of aircraft in taking off, maneuvering or landing a requisite factor for classifying a structure as such, and thereby limits the airport hazard area. A determination of whether a structure is an "airport hazard" as defined in section 333.01(3), Florida Statutes, in that it obstructs airspace required for the flight of aircraft in taking off, maneuvering or landing, is a mixed question of law and fact that may not be made by this office.
From a reading of the JAZB regulations, it could reasonably be inferred that those regulations would be applicable to any area within the territorial jurisdiction of a member political subdivision, regardless of the area's location in relation to the airport hazard area under JAZB's control. Whether the JAZB regulations affect zoning throughout Hillsborough County by virtue of the fact that Hillsborough County is a member of the board, however, would depend upon whether the regulatory powers conferred by Chapter 333, Florida Statutes, encompass such a comprehensive scheme.[7]
Once again, the plain language of the applicable statute is instructive. Section 333.03(1)(b), Florida Statutes, speaks to "any airport hazard area appertaining to such airport is located wholly or partly outside the territorial limits of said political subdivision. . . ." (e.s.) The authority of a joint airport zoning board to adopt regulations is specifically limited to "airport zoning regulations applicable to the airport hazard areain question."[8] (e.s.)
The term "appertaining" is defined as "belong[ing] either as something appropriate or as a part, possession, right, or attribute."[9] Thus, the airport hazard area subject to the control of JAZB would necessarily be such area appropriately affecting the airport or airports under JAZB's jurisdiction and would not extend to all of the territorial jurisdiction of Hillsborough County just because Hillsborough County is a member of JAZB.
Accordingly, it is my opinion that JAZB has the authority to regulate zoning only within the airport hazard area appertaining to the airport or airports subject to the board's jurisdiction, without regard to whether the area lies within Polk or Hillsborough County. Structures outside the airport hazard area under the control of JAZB would not be subject to JAZB zoning regulations, inasmuch as such structures are not airport hazards for the airport or airports operating under JAZB.
Sincerely
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 333.03(1)(a), Fla. Stat.
[2] Section 333.03(1)(b), Fla. Stat.
[3] Section 333.03(1)(b)1. and 2., Fla. Stat.
[4] Section 333.03(1)(b)2., Fla. Stat. Section 333.03(1)(a), Fla. Stat., provides:
"In order to prevent the creation or establishment of airport hazards, every political subdivision having an airport hazard area within its territorial limits shall, by October 1, 1977, adopt, administer, and enforce, under the police power and in the manner and upon the conditions hereinafter prescribed, airport zoning regulations for such airport hazard area."
[5] Section 333.01(4), Fla. Stat.
[6] Section 333.01(3), Fla. Stat.
[7] See, Cataract Surgery Center v. Health Care Cost ContainmentBoard, 581 So.2d 1359 (Fla. 1st DCA 1991) (agency may not extend or enlarge its jurisdiction beyond that which is granted statutorily), and Op. Att'y Gen. Fla. 95-14 (1995) (absent statutory authority school board may not expand arrest powers of its special security officers).
[8] Section 333.03(1)(b)2., Fla. Stat.
[9] Webster's Third New International Dictionary (1981 unabridged) p. 104.