819 So.2d 858 (2002)
DEPARTMENT OF CHILDREN AND FAMILIES, Appellant,
v.
R.H., A Child, Appellee.
No. 5D01-2116.
District Court of Appeal of Florida, Fifth District.
May 24, 2002.
Rehearing Denied June 14, 2002.
*859 Eric D. Dunlap, Department of Children and Families, Orlando, for Appellant.
Juliette Koves, Attorney Ad Litem, Orlando, and James A. Boatman, Jr., Guardian Ad Litem, of Stump, Storey & Callahan, P.A., Orlando, for Appellee.
Timothy A. Straus of Moyer, Straus and Patel, P.A., Altamonte Springs, for Mother.
SAWAYA, J.
The Department of Children and Families (DCF) appeals from an order finding it in contempt for its failure to comply with a previous order requiring placement of R.H., an adjudicated dependent juvenile, with Minnie Jones (Jones), an out-of-state relative, by a certain date. DCF argues the court erred because it failed to find DCF had the ability to comply with the order.[1] We agree and reverse.
R.H., two years old at the time, was adjudicated dependent and placed into foster care. On September 15, 2000, approximately four months after R.H. was adjudicated dependent, DCF filed with the court a motion seeking authorization to place R.H. with Jones pursuant to the Interstate Compact on the Placement of Children (ICPC), section 409.401, Florida Statutes. The court granted DCF's motion and ordered it to immediately commence the necessary procedures for the placement.
In March 2001, DCF filed a status report with the court, indicating that Jones's home state, New York, returned a positive home study. Placement with Jones, however, was contingent upon her receiving financial and medical assistance from DCF until such time as she completed the required classes that would allow her to receive financial assistance from New York. *860 On May 22, 2001, the court ordered DCF to provide Jones with a relative caregiver application by the end of that week and complete, process and place R.H. with Jones by June 4, 2001. Essentially, DCF had two weeks to comply with the court's order.
On June 5, R.H.'s attorney ad litem filed an unsworn motion for contempt, noting that DCF had failed to adhere to the court's May 22 order. The following day, the court issued a show cause order which required DCF to appear on June 7 and explain why DCF should not be held in contempt for "fail[ing] to place the child with her aunt in New York." Prior to the hearing, DCF filed a status report with the court wherein it explained:
The home study on a maternal aunt in New York, Minnie Jones, remains incomplete. The homestudy clearly indicates that [ ] Jones would need financial and medical assistance for the child. The child does not qualify for 4-E funding. The Department has requested that the home be licensed as a kinship placement.... Jones began Child Care and Adoption Classes in New York on April 18, 2001. The class is scheduled to be completed June 27, 2001. She will then be eligible for financial assistance through the state of New York.
The Department initiated the process of Relative Caregiver through the State of Florida. Historically, out of state relatives are not eligible for assistance, as outlined in the Department of Children and Families operating procedures.
At this time, the Department respectfully requests that the Court suspend the order of placement of the child until the relative begins to receive funds from the State of New York.
DCF presented evidence at the contempt hearing that it could not comply with the court's order because of the provisions of rule 65C-24.010, Florida Administrative Code, which provides in pertinent part that "[i]n order for a child placed with a relative caregiver to receive a monthly Relative Caregiver Program benefit, the child must ... reside in the state of Florida." Fla. Admin. Code R. 65C-24.010(5).[2] Since Jones lived in New York, DCF argued it could not provide the necessary assistance while Jones completed the classes because rule 65C-24.010(5) does not allow financial assistance for out-of-state placements. Further, DCF maintained that R.H. could lose all of her adoptive benefits if she was to be placed in New York without the proper approval from ICPC, which is the department responsible for placing any child with an out-of-state caregiver. Apparently, approval from ICPC was contingent upon Jones successfully completing the classes in New York.
After hearing the evidence, the court found DCF in contempt and ordered it to *861 immediately comply with its May 22 order to place R.H. with Jones, pursue relative caregiver funds pursuant to rule 65C-24.010 and the ICPC for Jones, and to present a plan within sixty days of the order explaining to the court how DCF could provide "funds to relative caregivers who [reside] out[side] the state of Florida." DCF asserts the court erred in holding it in contempt because DCF did not have the ability to comply with the court's May 22 order. DCF argues that the only evidence presented established that it was unable to comply with the May 22 order because: (1) rule 65C-24.010 expressly precluded out-of-state residents from receiving caregiver funds and (2) the home study could not be approved by New York without the relative caregiver financing having been obtained.
In order to ensure the orderly administration of justice, the courts are afforded "[b]road, discretionary contempt powers" to enforce compliance with their orders. Parisi v. Broward County, 769 So.2d 359, 363 (Fla.2000). Contempt proceedings and sanctions may be either civil or criminal. Id. This distinction is important because "the nature of the contempt both determines the procedures for adjudication and sets the parameters for the sanctions that can be imposed." Id. at 364 (citations omitted).[3] The court in Parisi explained:
The distinction between criminal and civil contempt often turns on the `character and purpose' of the sanctions involved. [International Union, United Mine Workers v.] Bagwell, 512 U.S. [821,] 827, 114 S.Ct. 2552[, 129 L.Ed.2d 642] [ (1994) ] (quoting Gompers [v. Buck's Stove & Range Co.,] 221 U.S. [418,] 441, 31 S.Ct. 492[, 55 L.Ed. 797] [1911]). We have previously explained that `[t]he purpose of criminal contempt... is to punish. Criminal contempt proceedings are utilized to vindicate the authority of the court or to punish for an intentional violation of an order of the court.' Bowen v. Bowen, 471 So.2d 1274, 1277 (Fla.1985). On the other hand, a contempt sanction is considered civil if it `is remedial, and for the benefit of the complainant.' Bagwell, 512 U.S. at 827-28, 114 S.Ct. 2552[, 129 L.Ed.2d 642] (quoting Gompers, 221 U.S. at 441[, 31 S.Ct. 492]).
Id. at 364.
Because a civil contempt proceeding is remedial in nature, its primary purpose is to obtain compliance with a court order by the person subject to the order. See Shook v. Alter, 729 So.2d 527 (Fla. 4th DCA 1999). Thus, "[a] civil contempt sanction is coercive in nature and is avoidable through obedience." Amendments to Fla. Family Law Procedure, 723 So.2d 208, 213 (Fla.1998) (citations omitted); Shook. We conclude that the underlying nature of the contempt order in the instant case is to advance R.H.'s best interests. The court's intention was to force DCF to comply with its May 22 order so that R.H. could be placed with Jones in New York. Hence, the court's order was for the benefit of R.H. and, as such, was civil.
*862 There is a wide array of sanctions that may be imposed for civil contempt including incarceration and imposition of a fine. Parisi. Regardless of the sanction, "the key safeguard in civil contempt proceedings is a finding by the trial court that the contemnor has the ability to purge the contempt." Id. at 365 (citing International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 829, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); Gregory v. Rice, 727 So.2d 251, 253-54 (Fla.1999); Pompey v. Cochran, 685 So.2d 1007 (Fla. 4th DCA 1997)). In the absence of such a finding, a coercive civil sanction is transformed into a criminal punishment which has been imposed in violation of the alleged contemnor's constitutional rights. See Bresch v. Henderson, 761 So.2d 449 (Fla. 2d DCA 2000); Pompey.
Florida courts also require that in order to find an individual in contempt, the trial court must find that the contemnor had the ability to comply with the previous court order.[4] The contempt order under review does not contain the requisite finding that DCF had the ability to comply with the May 22 order. Moreover, after finding DCF in contempt, the court failed to provide the necessary purge provisions in the order of contempt. Even if we were to construe the provisions of the contempt order as purge provisions, the court failed to make the requisite finding that DCF had the ability to comply with them. Accordingly, the contempt order is reversed.
REVERSED.
GRIFFIN and ORFINGER, R. B., JJ., concur.
NOTES
[1] Resolution of this issue renders moot the other issues raised by DCF.
[2] The validity of this rule is not an issue that was raised in the proceedings in the trial court and it is not an issue before us. Therefore, for purposes of deciding the specific issue we address in the instant proceedings, we will presume that the rule is valid. See St. Johns River Water Mgmt. Dist. v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA 1998), superseded by statute on other grounds, Southwest Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc., 773 So.2d 594 (Fla. 1st DCA 2000); Willette v. Air Products, 700 So.2d 397 (Fla. 1st DCA 1997); Injured Workers Ass'n of Florida v. Department of Labor & Employment Sec., 630 So.2d 1189, 1191 (Fla. 1st DCA 1994) ("Rules are entitled to a presumption of constitutional validity and should be interpreted, if possible, in a manner that preserves their validity.") (citations omitted); City of Palm Bay v. State, Dep't of Transp., 588 So.2d 624 (Fla. 1st DCA 1991). Hence, this opinion is limited to the issue of whether the contempt order should be reversed because the trial court failed to find that DCF had the ability to comply with its court order.
[3] In terms of the standard of proof, for example, the distinction is important because criminal contempt may be imposed only if proved beyond a reasonable doubt whereas civil contempt does not require proof beyond a reasonable doubt. See Parisi; Braisted v. State, 614 So.2d 639, 640 (Fla. 4th DCA 1993) (noting, "[T]he standard for criminal contempt proceedings is higher than the standard of proof that is required in civil contempt proceedings. In the latter, a preponderance of the evidence will suffice, while in the former, the conduct must be provable beyond a reasonable doubt.") (citing Mrha v. Circuit Court, Felony Div., Broward County, 537 So.2d 182 (Fla. 4th DCA 1989)); see also Dowis v. State, 578 So.2d 860 (Fla. 5th DCA 1991).
[4] State ex rel. Trezevant v. McLeod, 126 Fla. 229, 170 So. 735, 735 (1936) (holding that a civil contempt order "must be based on an affirmative finding that it is within the power of the defendant to obey the order, and such finding must be made to appear on the face of the order of commitment, else it is void.") (citation omitted); State, Dep't. of Health & Rehabilitative Servs. v. Maxwell, 667 So.2d 980 (Fla. 4th DCA 1996) (concluding that trial court failed to make express finding in order that HRS had ability to comply with court's directives); State, Dep't of Health & Rehabilitative Servs. v. Bills, 661 So.2d 69, 70 (Fla. 2d DCA 1995) (stating, "Before a trial court can hold a party in civil contempt, it must make a finding that the party has the present ability to comply with the order ....") (citation omitted); Brown v. Brown, 658 So.2d 627 (Fla. 5th DCA 1995); Bauer v. Hardy, 651 So.2d 748 (Fla. 1st DCA 1995); Florida Dep't of Health & Rehabilitative Servs. v. State, 616 So.2d 66 (Fla. 1st DCA 1993); Florida Coast Bank of Pompano Beach v. Mayes, 433 So.2d 1033, 1036 (Fla. 4th DCA 1983) ("[T]rial courts should make an express finding of ability to comply before imposing sanctions."); Grapin & Chaykin, M.D., P.A. v. Turnoff & Fox, M.D., P.A., 413 So.2d 133 (Fla. 3d DCA 1982) (holding contempt order is void because it did not contain findings that the alleged contemnors had the present ability to comply with the underlying order); see also § 38.23, Florida Statutes (2001) ("A refusal to obey any legal order, mandate or decree, made or given by any judge either in term time or in vacation relative to any of the business of said court, after due notice thereof, shall be considered a contempt, and punished accordingly....").